VIOLA MAE SPANGLER, *Admx., etc.*

*v.*

CLARENCE FISHER

(No. 12688)

Submitted February 6, 1968.      Decided March 19, 1968.

*Preiser, Greene & Hunt, W. Dale Greene,* for appellant.

*Haynes & Ford, Sheldon E. Haynes,* for appellee.

CALHOUN, JUDGE:

This case, on appeal from the Circuit Court of Pocahontas County, involves a wrongful death action instituted in that court by Viola Mae Spangler, as administratrix of the estate of her deceased husband, McKinley Spangler, against Clarence Fisher. The plaintiff alleged in her complaint that the death of her husband was negligently caused by Clarence Fisher, the defendant, on May 20, 1964, in the use and operation of a dump truck owned by him.

In entering summary judgment in favor of the defendant, the trial court held, in accordance with the defendant's contention, that McKinley Spangler and Clarence Fisher, at the time the death resulted, were fellow employees of J. B. Belcher and Son, Inc., a corporation, a subscriber to the workmen's compensation fund; and that, therefore, the plaintiff was precluded from recovery in the action by reason of the provisions of the workmen's compensation law of this state contained in Code, 1931, 23-2-6a, as amended.

Section 6a, referred to above, provides that the immunity of an employer "from liability set out in the preceding section shall extend to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention." The immunity of the employer provided for in the preceding section, Code, 1931, 23-2-6, relates to "the *injury or death* of any employee however occurring, * * *." (Emphasis supplied.)

In a recent decision, this Court held that, by reason of the provisions of Section 6a, quoted above, "an employee

of a subscriber to the workmen's compensation fund who negligently injures a fellow employee during the course of their employment is not liable to respond in damages to the injured fellow employee for the personal injuries thus caused to him." *Bennett* v. *Buckner*, 150 W. Va. 648, pt. 2 syl., 149 S. E. 2d 201. In the body of the opinion of that case (150 W. Va. 654, 149 S. E. 2d 205), the Court held that the immunity granted to an employee by Section 6a "clearly refers to the immunity of the employer under the workmen's compensation laws. * * *" Counsel for the respective parties do not disagree concerning the correctness of the law in this respect.

The primary contention made in behalf of the plaintiff on this appeal is that the trial court erred in entering a summary judgment for the defendant because the record discloses the basis for a genuine issue of material fact on the question whether Fisher, at the time and on the occasion in question, was using his dump truck, not as an employee, but rather as an independent contractor in performing services for and in behalf of J. B. Belcher and Son, Inc., which may be referred to hereinafter in this opinion merely as Belcher.

On March 4, 1966, at Lewisburg, the discovery deposition of O. F. Masters was taken by and in behalf of the defendant and the discovery deposition of Clarence Fisher, the defendant, was taken by and in behalf of the plaintiff. The motion for summary judgment was made thereafter by and in behalf of Clarence Fisher, the defendant, based on the two discovery depositions, and upon an affidavit of Sheldon E. Haynes, one of counsel for the defendant, which affidavit, as supplemented by copies of various papers and records from the office of the state compensation commissioner, established the fact that workmen's compensation benefits were paid to Viola M. Spangler, widow of McKinley Spangler, and to her son by reason of Spangler's death which resulted while he was working as an employee of Belcher.

On June 14, 1966, the parties appeared before the trial court by counsel and the motion for summary judgment

was submitted to the court for decision upon oral arguments made and briefs in writing submitted by counsel for the respective parties. By an order entered on November 7, 1966, the court sustained the defendant's motion, adjudged "that the plaintiff take nothing from the defendant" and directed that the action be dismissed from the docket of the court.

Belcher on and before May 20, 1964, was engaged in cutting timber in the Kumbrabow State Forest in Randolph County and in hauling the logs by trucks to its sawmill at Durbin in Pocahontas County. O. F. Masters was employed by Belcher as "timber superintendent" in connection with the cutting and removal of the timber.

In connection with the cutting and removal of the timber, it was necessary for Belcher to construct roads on the land within Kumbrabow State Forest. This work was being done by Spangler and other employees of Belcher under the direction of O. F. Masters in his capacity as timber superintendent. In order to place a culvert beneath the surface of one of the roads, Masters found it necessary or advisable to have some stones dumped in the wet, soggy earth over and around the culvert. Masters thereupon told Sam Johnson, Belcher's mill superintendent, of his need for a dump truck to be used in transporting the stones.

Sam Johnson thereafter went to the home of Clarence Fisher, the defendant, in order to arrange for the use of a dump truck owned by him. Fisher was then employed by Belcher on an hourly basis as a night watchman. He had been employed by Belcher in capacities other than night watchman over a period of years. As a night watchman, Fisher worked from eleven o'clock at night until seven o'clock on the following morning and was paid at the rate of $1.25 an hour.

Johnson and Fisher had been acquaintances for years and both had worked for Belcher before its timber operations were moved from Virginia to West Virginia. Sam Johnson arranged with Fisher for the use of Fisher's dump truck to haul stones at the rate of $3.50 an hour, which

included compensation for the use of the truck and also for Fisher's services in operating it. Fisher continued his employment as night watchman during the time he was using his truck in hauling stones in daytime.

On May 20, 1964, Fisher backed his loaded truck to a point near the culvert and left it there in a stationary or parked position. For some reason, not clear from the record, the truck subsequently moved backward with the result that Spangler was run over by dual wheels on the rear of the truck and killed instantly.

It is the contention of the plaintiff that at the time of and immediately preceding the occurrence which resulted in Spangler's death, defendant Fisher was admittedly an employee while performing duties as a night watchman but that he was acting as an independent contractor while using his truck in hauling stones for Belcher, and that, as an independent contractor engaged in the activity which resulted in Spangler's death, he was not entitled to the immunity accorded to a fellow employee under the provisions of the workmen's compensation laws previously referred to in this opinion.

It is not contended that the defendant in this wrongful death action was disqualified to testify as a witness under the provisions of the statute commonly referred to as the Dead Man's Statute. Code, 1931, 57-3-1, as amended. The petition for appeal to this Court asserts, however, that the trial court erred in "failing to refuse to consider the testimony of the defendant, Clarence Fisher, inasmuch as the declarations of an alleged agent are not admissible to establish agency." This same assignment of error is made in the plaintiff's brief filed in this Court, but the proposition is not argued in the brief and no authorities are cited in support thereof. This assignment of error, in these circumstances, perhaps might be treated as having been abandoned. Nevertheless, we regard the assignment of error as being without merit.

It is well settled that the extrajudicial admissions or declarations of an alleged agent are ordinarily inadmissible

to prove that such an agency relationship actually existed. *Rees Electric Co., Inc.* v. *Mullens Smokeless Coal Co.,* 141 W. Va. 244, 253, 89 S. E. 2d 619, 624; 3 Am. Jur. 2d, Agency, Section 354, page 711; 3 C. J. S., Agency, Section 322c (1), page 276. The alleged agent may, however, give testimony as a witness on the question of his agency. *Garber* v. *Blatchley,* 51 W. Va. 147, pt. 6 syl., 41 S. E. 222; *Union Bank & Trust Co.* v. *Long Pole Lumber Co.,* 70 W. Va. 558, pt. 6 syl., 74 S. E. 674; 3 Am. Jur. 2d, Agency, Section 353, page 711; 1A M. J., Agency, Section 114, pages 529-30. In the instant case, the relationship alleged was not that of principal and agent but rather that of master and servant, or employer and employee. *State ex rel. Key* v. *Bond,* 94 W. Va. 255, pt. 3 syl., 118 S. E. 276. Furthermore, proof of the relationship by Fisher was in the form of his testimony as a witness rather than in the form of extrajudicial declarations or admissions made by him. We are not aware of any legal basis for regarding as improper or inadmissible the sworn testimony of Fisher bearing on the character of the relationship resulting from his employment by Belcher at the time and under the circumstances involved in this case.

Defendant Fisher testified that, when Johnson initially approached him concerning the use of the truck, Johnson asked him what he "had to have and I told him it would have to be left up to him, whatever he wanted to give me. He said he would give me three dollars and a half ($3.50)." This proposed rate of pay was satisfactory to Fisher. He testified further that Johnson thereupon instructed him to report to Masters; that the sum of $3.50 an hour was not broken down so that a portion of it was compensation for his labor and a portion compensation for use of the truck; that he was paid "time and a half" for overtime work as a night watchman; that on a former occasion he had used his truck for Belcher around the sawmill, particularly to haul some rocks which were gathered from the creek and dumped "around the mill"; that after arrangements were made with Johnson for the use of Fisher's truck, he reported to Masters in Kumbrabow State Forest; that, while using his truck there, his "boss" was Masters

who "showed us and told us what to do"; that if he had any questions concerning his work, he went to Masters for instructions; that, when not actually using his truck to haul rocks, he performed other services, including assistance in placing rocks, placing a culvert, and making "a box for a drain"; that all the culverts were "wooden boxes"; that his use of the truck was intermittent rather than regular—"it wasn't every day and every day"; that, after the accident, Masters left the job and was replaced by Earl Doughton, who was thereafter the "boss" and "told us what to do"; that some time after Spangler's death, a man named Rexrode, who had been operating the "end loader" which was used to load rocks into the truck, left the job; that Fisher thereafter operated both the end loader in loading the rocks and also the truck in transporting the rocks; that, on August 20, 1964, about three months after Spangler's death, while Fisher was thus employed in this dual capacity, he sustained a broken arm, as a consequence of which he applied for and received workmen's compensation benefits as an employee of Belcher; and that, at some unspecified time after he sustained his broken arm, he used his truck in behalf of Belcher for "about a day and a half, I think" to haul "some gravel in there at the mill; * * *."

Fisher gave considerable additional testimony tending to show that his truck was in good mechanical condition and that the accident did not result from negligence on his part, but we consider it unnecessary and immaterial to a decision of this case to state this testimony in detail.

O. F. Masters testified that Fisher was under his "direct supervision" on the occasion in question and that "Mr. Sam Johnson had sent him up with his truck to help us repair the road." Masters was asked the following questions and gave the following answers:

"Q. Under whose direction and supervision was Mr. Fisher on that particular road job?

"A. Mine.

"Q. Who supervised him?

"A. I did.

"Q. Describe, if you will, the nature and extent of this supervision?

"A. Well, of course, we have the company end loader hauling rock and loading rock. Of course, I would tell him where to load and where to go to get the rock and where the end loader was and I would show him where to dump the rock when it got to the particular place we wanted it.

"Q. Was he ever called upon to perform any other work for J. B. Belcher than hauling stone?

"A. Well, I couldn't say he was, but when he wasn't doing that, he would be out helping the other work, too.

"Q. Of what nature?

"A. Throwing rock and placing rock and clearing things and moving things.

\* \* \*

"Q. You were excavating the ditch and putting a culvert in to carry that moisture?

"A. To carry the water off.

"Q. That was what these men were working on?

"A. That is what they were working on.

"Q. On the morning of May 20, 1964, did you give any instructions to Mr. Fisher that you recall?

"A. Nothing except to tell him that we wanted the rock hauled and dumped to fill up this hole over the culvert.

\* \* \*

"Q. I ask you whether or not you, as foreman on a job such as this, have the right to discharge or recommend the discharge of any employee of J. B. Belcher and Son?

"A. I do.

"Q. Did you have such authority there, at that time and in connection with this job, over Mr. Clarence Fisher?

"A. I did. If his work hadn't been satisfactory, I could have sent him back to the mill."

Masters further testified that Fisher "wasn't up there all the time. He just come up there when I had rock to haul." He testified that Fisher had been on the job approximately four or five days, or approximately half the period of two weeks he had been employed with his truck before the death of Spangler occurred. In relation to his right to fire or discharge a man working under his supervision on this job, Masters testified: "I could have but I would rather say that any of them who Mr. Johnson sent me in the woods—if they weren't satisfactory, I would send them back and let him do the firing."

It was suggested by counsel for the plaintiffs in oral argument that the trial court, in considering the motion for summary judgment, did not have before it affidavits, depositions or testimony of all persons who may have had some knowledge of the character or nature of the employment relation which existed between Belcher and Fisher at the time of Spangler's death, and that for this reason the motion should not have been granted. The record fails to disclose that this question was raised in the trial court. The trial court order entered on November 7, 1966, discloses that counsel for the plaintiff joined in submitting the motion for decision on briefs and oral arguments based on the two depositions and the affidavit which formed the basis of the motion. The judgment order entered on November 7, 1966, merely states that the plaintiff "objected and excepted to each of the rulings of the Court as set forth hereinabove." R. C. P. 56 (f) is as follows: *"When affidavits are unavailable.*—Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." There is no showing from the record that the plaintiff requested postponement of action on the motion, pursuant to the court rule quoted above, in order to permit submission of additional proof in opposition to the motion, and there is nothing in the record to justify a conclusion that such a postponement

would have been helpful to the plaintiff. We are of the opinion that the trial court committed no error in this respect. See Lugar & Silverstein, W. Va. Rules, pages 440-441.

The usual rules for determining whether a relationship is that of employer and employee or that of employer and an independent contractor are well settled and have been stated by this Court in many prior decisions. *Myers v. Workmen's Compensation Commissioner,* 150 W. Va. 563, 567, 148 S. E. 2d 664, 667; *McCoy v. Cohen,* 149 W. Va. 197, pt. 1 syl., 140 S. E. 2d 427; *West Virginia Water Service Co. v. I. V. Cunningham,* 143 W. Va. 1, pt. 5 syl., 98 S. E. 2d 891. The contention of the plaintiff that Fisher, on the occasion in question, was an independent contractor apparently is predicated basically upon the proposition that the employment in which he was then engaged involved the use of his truck on an hourly basis. Applying the legal tests stated in the cases cited immediately above, we are clearly of the opinion that the existing relationship was that of master and servant, or, as otherwise stated, employer and employee, notwithstanding the fact that the services then being performed by Fisher involved, in part, the use of his truck.

It is well settled from prior decisions of this Court that a party who moves for summary judgment under R. C. P. 56 has the burden of showing that there is involved no genuine issue as to any material fact; that any doubt as to the existence of such issue must be resolved against the movant for such judgment; and that, if it appears that no genuine issue of material fact is involved, it is the duty of the court to grant such motion. *The Employers' Liability Assurance Corp. v. Hartford Accident and Indemnity Co.,* 151 W. Va. 1062, 158 S. E. 2d 212; *Beaver v. Hitchcock,* 151 W. Va. 620, 153 S. E. 2d 886, and prior decisions cited in the opinions in those two cases.

We are of the opinion that the pleadings and depositions, together with the affidavit, showed that there was no genuine issue as to any material fact; that the trial court

acted with complete propriety and with ample justification in sustaining the defendant's motion for summary judgment on the ground that Clarence Fisher was a fellow employee of McKinley Spangler in the employment of Belcher on the occasion in question; and that Fisher was entitled to immunity from liability in the wrongful death action by reason of the workmen's compensation laws of this state previously referred to in this opinion.

For reasons stated in this opinion, the judgment of the Circuit Court of Pocahontas County is affirmed.

*Affirmed.*