**Gladys MAURAN and Irving Mauran**

v.

**The MARY FLETCHER HOSPITAL and The Medical Center Hospital of Vermont (Mary Fletcher Unit).**

**Civ. A. No. 5747.**

United States District Court,
D. Vermont.

Oct. 19, 1970.

Thomas J. Kenney, Burlington, Vt., for plaintiffs.

Wick, Dinse & Allen, Burlington, Vt., for defendants.

## OPINION AND ORDER

OAKES, District Judge.

Plaintiff's complaint, filed at 5:00 p. m. on November 21, 1969, seeks damages for personal injuries resulting from injection of what apparently was insulin instead of preoperative medication on November 22, 1963. The complaint contains four counts, the first count setting forth an alleged implied contract of hospitalization and treatment "in a good and workmanlike manner," as to which contract plaintiff claims a breach by the alleged improper injection. The second count alleges warranties to the plaintiff that the drug to be injected would be fit for the purpose for which it was intended to be used merchantable and genuine, and that there was a breach of these implied warranties by the alleged injection. The third count alleges the injection of "an inherently dangerous substance." The fourth count is simply one on behalf of the husband for loss of consortium and medical expense, and incorporates the first three counts.

The statute of limitations in Vermont for a suit for personal injuries is, of course, three years, 12 V.S.A. § 512(4),[1] while the statute for breach of contract and breach of implied warranty is six years, 12 V.S.A. § 511. Under the Ver-

---

1. "Actions for the following causes shall be commenced within three years after the cause of action accrues, and not after:

\* \* \* \* \*

(4) Injury to the person suffered by the act or default of another, except as otherwise provided in this chapter[.]"

mont law of the past a cause of action for medical malpractice or negligence has, as it used to be said, "sounded in tort" and accrued when the negligence occurred. Murray v. Allen, 103 Vt. 373, 154 A. 678 (1931), the classic case of an undiscovered sponge, holds that a medical malpractice claim accrues from the time of the malpractice, not from the time of its discovery. It is true that a number of courts in other jurisdictions have changed their views on this old rule of law because the old rule works an obvious injustice upon the innocent plaintiff in some situations. See, e. g., Lipsey v. Michael Reese Hospital, 262 N.E.2d 450 (Ill. June 29, 1970); see also Tomlinson v. Siehl, 459 S.W.2d 166 (Ky. June 5, 1970); see generally Prosser, Law of Torts, 3d ed. (1964), § 30; Frohs v. Greene, 452 P.2d 564 (Or.1969); Layton v. Allen, 246 A.2d 794 (Del.1968); Myers v. Stevenson, 125 Cal.App.2d 399, 270 P.2d 885 (1954).

It is also true that the Vermont Supreme Court has recently evidenced upon several occasions its readiness to re-examine in the light of modern conditions and new legal developments some of the legal maxims and shibboleths of the past. O'Brien v. Comstock Foods, Inc., 125 Vt. 158, 212 A.2d 69 (1965) (privity of contract not essential for action of negligence against food processor); Forcier v. Grand Union Stores, Inc., 264 A.2d 796 (Vt.1970) (duty of business invitor to discover foreseeable debris); Rothberg v. Olenik, 262 A.2d 461 (Vt.1970) (builder responsible for breach of warranty to ultimate buyer); Thompson v. Green Mountain Power Corp., 120 Vt. 478, 144 A.2d 786 (1958) (in hen blasting case damage without physical impact actionable, i. e., recovery for shock permissible); but see Baldwin v. State, 125 Vt. 317, 215 A.2d 492 (1965) (married woman does not have independent cause of action for loss of consortium).

■ It is unnecessary, however, to reach the question whether today's Vermont Supreme Court would overrule, in the light of recent trends and its own new cases, the holding in Murray v. Allen, supra, that a cause of action for malpractice accrues at the time of the alleged negligence and not at the time the injury is discovered. It is unnecessary because there is nothing to indicate in the complaint, here sought to be dismissed, that plaintiff did not in fact discover that the wrong substance had been injected into her at the time of its injection or shortly thereafter. While the plaintiffs' memorandum of law suggests that "It may well be that the first clear knowledge of the noxious agent arose on the occasion of defendant's judicial admission in this court on July 7, 1970," the pleadings contain no allegations of nondiscovery.

■ Likewise, plaintiffs' suggestion that this case may be within 12 V.S.A. § 518(a) (extending the period of limitation to twenty years in the case of nondiscovery of injury) cannot be followed for two reasons: The effective date of that act was March 16, 1967, more than three years after the alleged wrongful act herein; moreover, this statute refers only to "ionizing radiation" injuries or injuries from "other noxious agents medically recognized as having a prolonged latent development." There is no allegation in the instant case from which plaintiff could argue that the substance allegedly injected here was such a "noxious agent."

Thus we are faced directly with the question whether Vermont would recognize, and permit, a suit for breach of contract or breach of warranty in this situation, one involving the alleged injection of the wrong substance into a person for preoperative anesthesia purposes.

The problem here is not exactly a new one. A case from the Year Books of King Edward III sustained a writ when it was set forth that the defendant undertook to cure the plaintiff's horse of sickness and did his work so negligently that the horse died. Y.B. 43 Ed. III 33, pl. 38. See Holmes, The Common Law (Little, Brown & Co., 1943), History of Contract, pp. 275 et seq.; see also Y.B. 48 Ed. III 6, pl. 11 (action against a sur-

geon alleging that he undertook to cure the plaintiff's hand and that by his negligence the plaintiff's hand was maimed; writ failed for omitting to allege place of the undertaking).

And as the plaintiff here has pointed out, a number of jurisdictions in this country have recognized a cause of action in contract between a patient and his doctor or hospital. E. g., Stewart v. Rudner, 349 Mich. 459, 84 N.W.2d 816 (1957); and Robins v. Finestone, 308 N.Y. 543, 127 N.E.2d 330 (1955).

A detailed analysis of the cases, annotations and other literature written on exactly the point before us indicates no more than that American jurisdictions differ on the question whether a simple contract action will lie against a doctor or hospital for negligently inflicted personal injury, and if so, what the measure of damages will be. For every case in which a contract action is allowed, another can be found where it is denied. In Kozan v. Comstock, 270 F.2d 839 (5th Cir. 1959), Judge Wisdom presents a particularly thorough summary of the cases and the literature, in anticipating a decision of the Louisiana state court, as we are attempting to do here with the Vermont Supreme Court. See also Annot., 80 A.L.R.2d 320, Statutes of Limitation —Malpractice.

■ The persuasiveness of the reasoning in the *Kozan* case, supra, and the wording of the Vermont statute of limitations have convinced this Court that the Vermont Supreme Court would not presently recognize a cause of action in simple contract for medical malpractice on these facts. The 1959 practice act amendments encompassing 12 V.S.A. § 511 eliminated reference to causes of action in tort, contract and replevin, and apparently left the determination of the applicable statute of limitations to the nature of the injury claimed. Unless this case falls within the exception to 12 V.S.A. § 512(4), it is governed by the three year limitation applicable to suits for "injury to the person suffered by the act or default of another." 12 V.S.A. § 512(4).

On the issue of warranty, we start with the proposition that the administration of anesthesia involves primarily a rendering of service but in a very indirect and technical way may also involve or entail the sale of goods.

We are well aware, of course, of the decision in Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E.2d 792 (1954) (4–3 opinion holding that a hospital's furnishing of blood is not a sale but a part of the service rendered and carries no implied warranty). We are also aware of the numerous cases following it, as well as the New Jersey, Florida and California cases *contra*, along with the criticism of the law reviews, as to all of which see Jackson v. Muhlenberg Hospital, 96 N.J.Super. 314, 232 A.2d 879 (1967) (blood transfusion held a sale by hospital). A direct sale of a drug without the rendering of a service would plainly be a sale, at common law, under the Uniform Sales Act or under the Uniform Commercial Code. E. g., Herman v. Smith, Kline & French Laboratories, 286 F.Supp. 694 (E.D.Wis. 1968); Gottsdanker v. Cutter Laboratories, 182 Cal.App.2d 602, 6 Cal.Rptr. 320, 79 A.L.R.2d 290 (1960). The fact that the sale of the anesthesia here is a minimal element in the overall transaction does not mean that there cannot be a sale involved in the administration of anesthesia. Moreover, as suggested above, even if it were considered that the hospital was simply rendering a service, the rendering of that service might be said to carry with it certain implied warranties in any event. See Farnsworth, Implied Warranties of Quality in Non-Sales Cases, 57 Colum.L.Rev. 653 (1957); cf. Dodd v. Wilson [1946] 2 All E.R. 691 (K.B.) (veterinary surgeons liable for poisonous toxoid in cattle vaccine); Samuel v. Davis [1943] K.B. 526 (contract to make dentures); Watson v. Buckley [1940] 1 All E.R. 174 (K.B. 1939) (hairdresser liable for implied warranty for injuries caused by defective hair dye); Miller v. Winters, 144 N.Y.S. 351 (Sup.Ct.1913) (installation of heating system). Indeed, our own

Rothberg v. Olenik, 262 A.2d 461 (Vt. 1970), in stating that "the judiciary should be alert to the never-ending need for keeping its common law principles abreast with the times," 262 A.2d at 467, extends to the sale of a new house the law of implied warranty in respect to the sale of chattels. If a new house, why not anesthesia? See also Green Mountain Mushroom Co. v. Brown, 117 Vt. 509, 515, 95 A.2d 679 (1952) (implied warranty of fitness for particular purpose in roofing material case). While no Vermont case has yet determined the question whether giving an anesthetic by a hospital to a patient carries with it implied warranties for the breach of which an action will lie, the trend of decisions in Vermont and elsewhere indicates that the Supreme Court of Vermont might very possibly recognize such warranties. See generally Wasik v. Borg, 423 F.2d 44, 46–49 (2d Cir. 1970).

Even if those warranties were to be recognized, however, they could not afford Mrs. Mauran relief in this case. This is not a case in which a drug is claimed to have been defective or inherently dangerous. In such a case we anticipate relief for breach of warranty would lie. Here, however, it is claimed only that the wrong drug was administered. Put another way, while we view it is likely that the Vermont Supreme Court will in the future hold that the dispensing of drugs by a hospital carries with it the usual implied warranties of quality and merchantability, we do not think it possible that the state court would hold that a hospital in all cases warrants against the negligence of its employees. To do so would be to impose upon a hospital absolute liability for negligence, a standard of care not yet countenanced in Vermont law.

Whether the administration of a drug is considered a sale, in which case the warranties now codified in 9A V.S.A. §§ 2–313, 2–314, 2–315, would clearly apply, or whether it is regarded as a service, the plaintiff's claim here is not that her injuries resulted from a breach of warranty under either theory. Ac-cordingly, the complaint, except those portions which seek to recover extra medical expenses occasioned by the delay in plaintiff's operation, must be dismissed as untimely. The claim for medical expenses must be dismissed here for failure to meet the jurisdictional amount requisite to suit in a federal court. The plaintiff will, of course, be able to pursue her contract remedies for those extra expenses in a Vermont state court.