ETHEL FOSTER, *et al.*

*v.*

MEMORIAL HOSPITAL ASSOCIATION OF CHARLESTON

(No. 13450)

Decided November 25, 1975.

*Rudolph L. DiTrapano and W. C. Field* for appellants.

*Wilson Anderson* for appellee.

NEELY, JUSTICE:

At first blush this case would appear to be one of first and last impression in West Virginia; however, it presents a theoretical problem with regard to the law of warranty which may have continuing importance in analogous situations.

In 1970, the appellants, Ethel Foster and Freeman R. Foster, sued the defendant, Memorial Hospital Association of Charleston, for breach of warranty arising from a transfusion of impure blood into plaintiff Ethel Foster. Plaintiffs alleged that the defendant hospital impliedly warranted the blood as fit for the purpose of transfusion, and further alleged that the defendant hospital breached its implied warranty, as Mrs. Foster contracted serum hepatitis from the transfusion which rendered her permanently disabled. The Circuit Court of Kanawha County granted a summary judgment for the defendant hospital on the grounds that an exchange of blood is not a "sale" which would support an action in warranty, but rather is the performance of a "service." As the Circuit Court's decision is in harmony with the great weight of authority throughout the country, and

as this Court holds that an action in warranty is improper, the judgment of the Circuit Court is affirmed.

In 1971 the West Virginia Legislature enacted *W. Va. Code*, 16-23-1 (1971) which provided that the furnishing of human blood for transfusion is to be considered a service and not a sale, and that no warranties shall be applicable;[1] however, plaintiffs argue correctly that the facts supporting plaintiffs' cause of action arose in 1968, three years before enactment of the statute, and therefore, the disposition of this case is governed by the general law. Consequently, plaintiffs would have this Court resolve the case at bar on the basis of *W. Va. Code*, 46-2-106 (1963), concerning the definition of a "sale," *W. Va. Code*, 46-2-314 (1963) concerning implied warranties, and *W. Va. Code*, 46-2-315 (1963) concerning implied warranties for a particular purpose.[2]

---

[1]*W. Va. Code*, 16-23-1 (1971): "The procuring, furnishing, donating, processing, distributing or the using of human whole blood, blood plasma, blood products, blood derivatives, corneas, bones or organs or other human tissue for the purpose of injecting, transfusing or transplanting any of them in the human body, is declared for all purposes to be the rendition of a service by every person, firm or corporation participating therein, whether or not any remuneration is paid therefor, and is declared not to be a sale of any such items and no warranties of any kind or description shall be applicable thereto." [*Acts of the Legislature*, 1971 Regular Session, Ch. 75, p. 371.]

[2]*W. Va. Code*, 46-2-106 (1963):

"(1) ... A 'sale' consists in the passing of title from the seller to the buyer for a price."

*W. Va. Code*, 46-2-314 (1963):

"(1) Unless excluded or modified ... a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

"(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

The facts of this case do not disclose whether the transfer of blood was characterized as a "sale" by the parties at the time of the transfusion, and while the parties argue the question vociferously in their respective briefs, the record is devoid of any concrete evidence concerning the issue. On a motion for summary judgment the facts must be viewed in a light most favorable to the party against whom the motion is sought. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *Spangler v. Fisher,* 152 W. Va. 141, 159 S.E.2d 903 (1968). Therefore, we must assume, arguendo, that the defendant hospital accounted for the transaction as a "sale."

The simplest method of disposition would be for this Court to characterize the transaction as either a "sale" or a "service" as a matter of law and to permit that linguistic characterization to be dispositive of the issue; however, such a course provides merely a result without a reason. The issue in this case is not simply whether ownership of personal property passed from one person to another, but rather whether the transfer of personal property in this case is of the type contemplated under the law of warranty.

## I

The great weight of authority in the United States under the common law, the *Uniform Commercial Code,* and the old *Sales Act,* is that a transaction involving

---

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved: ...

\* \* \*

"(3) Unless excluded or modified ... other implied warranties may arise from course of dealing or usage of trade."

*W. Va. Code,* 46-2-315 (1963):

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section ... an implied warranty that the goods shall be fit for such purpose."

blood is not a "sale" creating an implied warranty of fitness. The landmark case on the subject is *Perlmutter v. Beth David Hospital*, 308 N.Y. 100, 123 N.E.2d 792 (1954) in which the court held that the essence of the contractual relationship between hospital and patient is one in which the patient bargains for, and the hospital agrees to make available, the human skill and physical materiel of medical science to the end that the patient's health is restored. The Court said:

> "Such a contract is clearly one for services, and, just as clearly, it is not divisible. Concepts of purchase and sale cannot separately be attached to the healing materials—such as medicines, drugs, or, indeed, blood—supplied by the hospital for a price as part of the medical services it offers. That the property or title to certain items of medical material may be transferred, so to speak, from the hospital to the patient during the course of medical treatment does not serve to make each such transaction a sale. 'Sale' and 'transfer' are not synonymous, and not every transfer of personal property constitutes a sale. [Citations omitted] It has long been recognized that, when service predominates, and transfer of personal property is but an incidental feature of the transaction, the transaction is not deemed a sale within the Sales Act." *Id.* at 794.

This Court agrees with the reasoning of *Perlmutter*, *supra*, and holds that a court must look to the underlying contract in a close case such as the one *sub judice* in order to discover its implied terms.[3] The provisions of

---

[3]In the following cases, the respective courts held that warranty theory did not apply to the underlying contract in service-type situations: *Robinson v. Graves*, 1 K.B. 579 (1935) where a contract to paint a picture was held a service and not a sale even though title to the canvas passed from artist to customer; *Saugus v. B. Perini & Sons, Inc.*, 305 Mass. 403, 26 N.E.2d 1 (1940), where the furnishing of gravel under a contract to build a highway was held to be a service and not a sale even though a specific price was set for the gravel; and *Babcock v. Nudelman*, 367 Ill. 626, 12 N.E.2d 635 (1937), where the court held that even though eye glasses are tangible personal property, an optometrist furnishes the eye glass-

*W. Va. Code*, 46-2-314 (1963) create a warranty " . . . if the seller is a merchant with respect to goods of that kind." A hospital or a doctor does not exactly fit into the mold of a "merchant" in the transaction of furnishing blood to a patient in the course of medical treatment. Obviously the ownership of personal property passed for a consideration; however, is it the type of transfer to which the law of warranty applies? There is a reasonable difference between a merchant on the one hand who is engaged in the active promotion and sale of his product such as coca cola bottles, automobile axles, or standardized drugs and a doctor, dentist or lawyer on the other hand who supplies medicine, blood, tooth fillings, or legal briefs in the course of his professional relationship with a patient or client.[4]

---

es only as an incident of professional services in correcting vision and therefore the transfer is not such as to fall subject to the Retailers' Occupation Tax.

[4]Not only is the transfer of blood by a hospital to a patient distinguishable from the sale of more traditionally recognized market products by more commonly acknowledged merchants, but also, at least according to one jurisdiction, various transfers of blood may arguably be distinguished depending upon the source of the transfer. In a series of opinions concerning cases with fact situations almost identical to the case *sub judice*, Florida courts held that, on one hand, a hospital that supplies whole blood to a patient is merely performing a service incident to the over-all medical treatment being furnished and, therefore, the hospital is not liable in a cause of action brought against it for breach of implied warranty; on the other hand, the Florida courts held that a blood bank which originally collects, distributes and supplies blood to a hospital for a consideration has in fact made a sale and the blood bank is liable under implied warranty theory. *See, Russell v. Community Blood Bank*, 185 So.2d 749 (Fla. 1966); *Community Blood Bank v. Russell*, 196 So.2d 115 (Fla. 1967); *Hoder v. Sayet*, 196 So.2d 205 (Fla. 1967); and *White v. Sarasota County Public Hospital Board*, 206 So.2d 19 (Fla. 1968). The reasoning of this line of cases probably stands for the proposition that while a professional who transfers personalty incident to the rendering of a service must be sued in tort, a manufacturer with the ability to establish quality control may be sued in contract for breach of warranty. In light of the recent elimination in West Virginia of the requirement of privity of

In the practice of medicine there is inevitably a balancing of risks and benefits to any patient involving a highly sophisticated set of probabilities which must be analyzed by medical practitioners in order to do the maximum possible good for the patient with the minimum possible risk. While in the case at bar the hospital may conceivably have been negligent in not subjecting the blood to more extensive tests, blood is not such a standardized product that its use can be segregated from the skill and judgment of the person prescribing it in the same way that an automobile wheel can be segregated from the skill and judgment of the mechanic installing that wheel on a vehicle.

The hospital has not undertaken to be an insurer in this type of situation and the Court finds that holding the hospital liable today would encourage a gradual expansion of the doctrine of warranty to permit recovery in situations totally outside the intent of the warranty provisions of the *Uniform Commercial Code,* which have historically required negligence. If the plaintiffs in the case at bar believed that the hospital or the attending physicians acted in a negligent way, and failed to use due care to protect Mrs. Foster from the known risk of serum hepatitis, they could have brought a timely action in tort, and, through discovery procedures, could have determined whether the hospital met the standard of care applicable to this type of situation.

## II

The plaintiffs allege that the transfused blood contained serum hepatitis viruses and argue that the risk of this type of infection from the routine transfusion of blood should be borne by the hospital. Unlike standard commercial products, however, blood is dispensed under a wide variety of circumstances which do not lead to the imposition of the type of uniform standard of care envis-

---

contract to support an action in warranty in the vertical chain of distribution, this result would appear reasonable from both a practical and social policy perspective.

aged by the law of warranty. In this regard blood which is manufactured in the human body can be distinguished from standardized drugs in that the latter are amenable to quality control by the manufacturer while human blood is obviously not. One can imagine a situation in which a patient needs a large quantity of blood over a protracted period of time, and in which blood is taken from one donor after another to be transfused almost immediately into the patient. Obviously under circumstances such as this the degree of "reasonable care" necessary to protect the hospital from liability must be lower than in other circumstances because the exigencies of the situation demand speed, and the time necessary for the performance of tests is not available. Otherwise the hospital leaves the healing business and enters the insurance business.

Similarly, while the giving of inherently dangerous experimental drugs may be "reasonable" in a "last-ditch" effort to save a patient who would inevitably die in spite of all known treatment, the giving of the same drugs to a mildly ill patient who could be cured by more conservative procedures is far less "reasonable." An action in tort against the doctor would test the reasonable care in the doctor's over-all treatment in fact situations such as these. By contrast, an action in warranty against the doctor would not permit consideration of the facts most relevant to the question of liability.[5] The

---

[5]In the interests of consumer protection, two separate theories of liability have developed in this country. While some states rely primarily on the theory of implied warranty in contract, other states employ the theory of strict liability in tort to effect similar protections for consumers. Both theories, however, are relatively undeveloped in West Virginia common-law. Only recently, in the case of *Dawson v. Canteen Corp.*, W. Va., 212 S.E.2d 82 (1975) has privity of contract been abolished in warranty actions in West Virginia.

While we hold today that implied warranty is inapplicable to the facts in this case, there is also authority from foreign jurisdictions indicating that strict liability in tort would be equally inapplicable. Apparently, courts have refused to extend absolute tort liability to persons rendering either professional or non-professional services. *See, Barbee v. Rogers*, Tex., 425 S.W.2d 342 (1968) where an optome-

transfer of dangerous or experimental drugs in the last example is technically a "sale," but it is not the type of "sale" contemplated by *W. Va. Code*, 46-2-106 (1963) and the law of warranties is not applicable. If, however, the medicine itself is a standard product, and is defective in the sense that it deviates from the accepted standard, then the law of warranty would apply.

Accordingly, we hold that where an individual contracts for *professional* services involving an incidental transfer of personal property as a necessary part of such service, and where the appropriate use of such personal property depends primarily upon the skill and judgment of the person rendering the service, such a transfer of personal property by the professional is not within the contemplation of *W. Va. Code*, 46-2-314 (1963) or 46-2-315 (1963) and any injury or damage resulting from such transferred personal property must be recovered by an action grounded in negligence and not by an action grounded in warranty. Therefore, the judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*

---

trist was absolved from both theories of liability for injuries to a patient's eye resulting from improper fitting of a contact lens; *Margine v. Krasnica*, 94 N.J.Super 228, 227 A.2d 539, *aff'd Margine v. Spector*, 100 N.J.Super, 223, 241 A.2d 637 (1967) where a dentist was held not strictly liable to a patient who sustained injury when a latent defect in a hypodermic needle caused the needle to break off in the patient's jaw while the dentist was administering a local anesthetic. *See also, LaRossa v. Scientific Design Co.*, 402 F.2d 937 (3d Cir. 1968) where the court held that strict liability has not been imposed on those who have agreed to furnish labor and services. Consequently, although to so hold would be beyond the issues in the case at bar, it appears that the best route in cases of this nature would be an action in tort for ordinary negligence.