617 A.2d 364

James and Aletha STEPHENSON, H/W, Appellants,

v.

Steven J. GREENBERG, M.D. and Albert Einstein
Medical Center Mt. Sinai—Daroff Division,
Appellees. (Two Cases)

Superior Court of Pennsylvania.

Submitted June 2, 1992.

Filed Nov. 20, 1992.

2

John M. Sheridan, Media, for appellants.

James M. Penny, Jr., Philadelphia, for Steven J. Greenberg, M.D., appellee.

Jill E. Baratz, Philadelphia, for Einstein Medical Center, appellee.

Before CAVANAUGH, DEL SOLE and BECK, JJ.

CAVANAUGH, Judge:

Aletha Stephenson and her husband James Stephenson appeal from the orders of the Court of Common Pleas of Philadelphia County entered on January 24, 1991 and February 22, 1991 granting summary judgment to the defendants in this medical malpractice action. For the reasons stated hereinafter, we affirm those orders.

The facts of this case are as follows. Appellant-plaintiff-wife experienced abdominal pains in connection with a ruptured ovarian cyst. While in the hospital, she was treated with the prescription drug Keflex, an antibiotic for fighting infection. Appellant-wife is allergic to Keflex, and asserts that she informed the hospital of this fact before the drug was administered. On September 22, 1985 appellant-wife had an anaphylactic reaction to the drug, exhibiting blotchy skin, nausea, and a feeling that her throat was about to close.

Appellant-wife is a nurse, and appellant-husband is a physician, and both realized on September 23, 1985 that this reaction was an allergic reaction to the administration of the medication. She alleges that she had a repeat occurrence on October 25, 1985, and has been having "panic attacks" since then. Appellants claim that these are a post-traumatic stress disorder relating back to the initial administration of Keflex, discovered in 1986 when she came under the care of one Dr. Ganime, her psychiatrist.

The plaintiffs filed a writ of summons on October 8, 1987, beginning the litigation in this malpractice action. Appellees filed preliminary objections; appellant filed an amended complaint on May 20, 1988. Appellees, in their answers to the complaint and new matter, alleged that the two-year statute of limitations on tort actions acted to bar this action.

Appellants then filed a petition to amend their complaint to add a claim for breach of warranty of fitness for a particular purpose under the Sales Article of the Uniform Commercial Code (U.C.C.).[1] Appellants alleged that the appellee-hospital and appellee-doctor sold goods which were unsuitable for their

1. 13 Pa.C.S. § 2315 *et seq.*

intended purposes. This claim has a four-year statute of limitations,[2] which had not yet run. The petition for leave to amend was denied, as was a petition to reconsider. The trial court then granted the appellee-defendants' motions for summary judgment based on the statute of limitations. This appeal followed.

■ We address appellants' claims in reverse order. Appellants lastly claim that the trial court erred in granting summary judgment because the medical malpractice action was barred by the two year statute of limitations.[3] They argue that because appellant-wife's was not aware that her emotional difficulties were caused or related to the administration of Keflex at an earlier time, the statute of limitations did not begin to run.

■ As an initial matter, we note that summary judgment is governed by the Pennsylvania Rules of Civil Procedure. Rule 1035(b) provides, in pertinent part, that summary judgment:

> shall be rendered if the pleadings, depositions, Answers to Interrogatories, and Admissions on file, together with the Affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

Further, the deciding court must view all of the evidence in a light most favorable to the non-moving party *Rossi v. Pennsylvania State University*, 340 Pa.Super. 39, 48, 489 A.2d 828, 833 (1985), and draw all reasonable inferences in favor of the non-moving party. *Helinek v. Helinek*, 337 Pa.Super. 497, 502, 487 A.2d 369, 372 (1985). Finally, summary judgment may be rendered only in cases that are free from doubt. *Huffman v. Aetna Life and Casualty Co.*, 337 Pa.Super. 274, 277, 486 A.2d 1330, 1331 (1984).

2. 13 Pa.C.S. § 2725, which provides as follows:
(a) General rule.—An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued ...

3. 42 Pa.C.S. § 5524.

With this background in place, we turn to our analysis of appellants' claim. The malpractice action was filed over two years from the date of the alleged malpractice. Therefore, the "discovery rule" first enunciated in *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959) is applicable. In *Ayers,* a surgeon left a surgical sponge in the patient, who did not discover the sponge until nine years later as a result of complications. There, our supreme court held that the statute is triggered when the injury is discovered, not when the causative act took place.

This court modified the *Ayers* rule in *Shadle v. Pearce,* 287 Pa.Super. 436, 430 A.2d 683 (1981). In that case, a dentist treated an abscessed tooth negligently, in 1972, causing bacterial endocarditis which required an aortic valve transplant in 1973. At that point the patient made a conscious decision not to sue the dentist, as his costs were covered and a full recovery was expected. Three years later, the patient developed an aortic aneurysm, which totally incapacitated him and severely decreased his life expectancy. In holding that the action was barred by the statute of limitations, we stated that:

> If we were to hold otherwise under the facts presented here, we would create a concept in the law which would permit an injured plaintiff to have a new limitations period commence for the initiation of an action for personal injuries as of the date when each complication or change in condition arose, despite the fact that no "new" negligence has occurred which is attributable to the defendant. Such a concept would be contrary to the legislative intent inherent in our creation of periods of limitations in our law. *Shadle v. Pearce, supra,* 287 Pa.Super. at 441, 430 A.2d at 685–686.

In his analysis of these cases in *Manzi v. H.K. Porter Co.,* 402 Pa.Super. 595, 599, 587 A.2d 778, 780 (1991), our esteemed colleague Judge Johnson noted that:

> Taken together, *Ayers* and *Shadle* [sic] established a common-sense rule based upon the fact that certain injuries do not conveniently manifest themselves within the statutory period. At the same time, a plaintiff, once aware that

damage has been sustained, may not renew an attack upon the defendant at each stage of a progressing illness.

This court had occasion to address a more similar issue in *Groover v. Riddle Memorial Hospital,* 357 Pa.Super. 420, 516 A.2d 53 (1986). In that case a woman received an extraordinarily painful injection in her leg while in the hospital in March or April of 1979. She was in pain constantly from that point on, and gradually losing muscular control in her leg. She went to see various specialists who could not pinpoint the medical cause of her injury until June of 1983, when a specialist determined the injury to be a sciatic nerve injury, and linked it to the injection. Suit was filed in September of 1983. We stated there, given the facts of that case, that the plaintiff "knew or reasonably should have known 1) that she was injured [in 1979], and 2) the operative cause of her injury, and 3) the causative relationship between the injury and the operative conduct" and affirmed the granting of summary judgment based on the statute of limitations.

As each case has different circumstances, each must be evaluated in light of its own particular facts. In the case currently under review the trial court noted in its brief opinion that:

> We found that the cause of action accrued here no later than September 23, 1985. By that time Plaintiff [Appellant] Mrs. Stephenson had not only sustained her injury, she was also aware of her injury and, as a nurse, knew its source. Her knowledge had the effect of causing the statute to run, even considering the effect of the "discovery rule" recognized by our case law. *Bickford v. Joson,* 368 Pa.Super. 211, 533 A.2d 1029 (1987). Although a second attack induced by the drug is alleged to have occurred one month later, Plaintiffs need not know the nature and extent of their injuries in order for the statute to begin to run. Since Plaintiffs failed to file suit until over two years had elapsed since the cause of action arose, we granted Summary Judgment . . . (Opinion, at 1–2).

Post-traumatic stress disorders have been recognized by the American Psychiatric Association as distinct psychiatric disor-

ders.[4] However, the symptoms suffered by the appellant-wife in this particular case are identical to the symptoms suffered by the appellant-wife after the initial injection. In their complaint, at count 8, the plaintiffs contended that:

8. Soley [sic] as a result of the aforesaid negligence of Defendants herein, PATIENT PLAINTIFF was caused to suffer severe anxiety attacks *characterized by anaphylactic shock-type symptoms* which first manifested themselves October 24, 1985.... (Emphasis added).

The lower court found that the initial symptom signifying injury was experienced on September 23, 1985.[5] As the continuing alleged emotional injuries are manifested as the same injury initially allegedly inflicted by the hospital, it follows that, as a matter of law, that appellant knew or reasonably should have known that she was injured on September 23, 1985.

The law allowed the appellant two full years from September, 1985 to bring an action; the law requires that those who assert claims of negligence be vigilant in bringing legal actions based thereon. During that two year period the full extent of the appellants' alleged injuries may have became more fully known as appellant-wife's attacks persisted; however, nothing prevented appellants from pursuing a cause of action before the limitations period had elapsed. The medical malpractice action consequently is barred by the two-year statute of limitations, and the trial court did not err in granting the defendants' preliminary objections to the complaint.

■ Appellants additionally contend that the lower court abused its discretion in denying the petition to amend the complaint because there was viable cause of action in an

4. See *Diagnostic and Statistical Manual of Mental Disorders,* (3d. Ed. 1980).

5. Appellant's complaint belies her contention that it took over a year for her psychiatrist to determine the cause of her alleged symptoms. They were, according to the complaint, "anaphylactic shock-type" symptoms. Therefore, the appellants themselves have established in their complaint that they should have reasonably have been aware that the initial injury suffered (anaphylactic shock) was the cause of the alleged emotional symptoms.

implied warranty of fitness, the statute of limitations had not yet run, and no prejudice would result from allowing the amendment.

Initially, we note our standard of review when addressing such a claim has been succinctly established.

> When reviewing a trial court's ruling on a party's petition to amend we must bear in mind that the trial court is granted broad discretion in evaluating amendment petitions. *Newcomer v. Civil Service Comm'n of Fairchance Borough*, 100 Pa.Cmwlth. 559, 564–565, 515 A.2d 108, 111 (1986). The sound discretion of the trial court will not be disturbed on appeal absent a showing of an abuse of that discretion. *Ecksel v. Orleans Constr. Co.*, 360 Pa.Super. 119, 131, 519 A.2d 1021, 1027 (1987).

*Horowitz v. Universal Underwriters*, 397 Pa.Super. 473, 478, 580 A.2d 395, 398 (1990).

Pennsylvania Rule of Civil Procedure 1033 provides, in pertinent part, that a party:

> either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, *even though they give rise to a new cause of action or defense.* (Emphasis added).

Additionally:

> This rule has repeatedly been interpreted as requiring the liberal evaluation of amendment requests, *see* Pa.R.C.P. 126,[6] in an effort to secure a determination of cases based upon their merits, *Gallo v. Yamaha Motor Corp., U.S.A.*, 335 Pa.Super. 311, 313–14, 484 A.2d 148, 150 (1984), rather than based upon a mere technicality.

*Horowitz, supra.*, 397 Pa.Super. at 478–79, 580 A.2d at 398.

This liberality is not without its limitations, however. Pennsylvania appellate courts have repeatedly ruled that an amend-

---

6. This rule, provides, in part, that "[t]he rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." Pa.R.C.P. 126.

ment will not be permitted where it is against a positive rule of law, or where the amendment will surprise or prejudice the opposing party. *Robinson Protective Alarm Co. v. Bolger & Picker,* 512 Pa. 116, 119 fn. 6, 516 A.2d 299, 302 fn. 6 (1986).

The appellees in this matter vigorously assert that the lower court was correct in denying the petition to amend because the cause of action asserted therein was meritless. Their reasoning is twofold. First, they assert that the hospital stay was not a transaction in goods, and as such, is not governed by the UCC. Secondly, they assert that even were the transaction governed by the UCC, the appellants have not pleaded facts which would permit any recovery; specifically, that the product delivered was not defective or unsuitable for its intended purpose.

The appellants' underlying claim appears to be one of first impression in this Commonwealth. In essence, we are called upon to determine whether a hospital in the course of administering treatment to its patients through a staff physician and dispensary may be held liable as a merchant under the Uniform Commercial Code.

Pennsylvania was the first state to adopt the Uniform Commercial Code, in 1953. The version in effect was adopted in 1979, and warranty of fitness for a particular purpose is found at 13 Pa.C.S. § 2315, and reads as follows:

**Implied Warranty: fitness for a particular purpose**

Where the seller at the time of contracting has reason to know:

(1) any particular purpose for which the goods are required; and

(2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods;

there is unless excluded or modified under section 2316 (relating to exclusion or modification of warranties) an implied warranty that the goods shall be fit for such purpose.

For the Sales Article of the Uniform Commercial Code to apply there must be a "transaction in goods". *Whitmer v.*

*Bell Telephone Company of Pennsylvania,* 361 Pa.Super. 282, 288–9, 522 A.2d 584, 587 (1987). Further:

> When the transaction involves predominantly the rendition of services, the fact that tangible, movable goods may be involved in the performance of the contract does not bring the contract under the code. *Id.*

In *Whitmer,* the plaintiff was injured while using the telephone. This court reasoned that placing a telephone call was not a transaction involving the sale of goods, it was the rendition of services.

In *DeMatteo v. White,* 233 Pa.Super. 339, 336 A.2d 355 (1975) a plaintiff sued the contractor who built his house, asserting that the bricks he used were defective. This court, vacating an order granting judgment on the pleadings, reasoned that the action did not fall under the UCC because the operation was one of building, or construction, not one of sale, within the meaning of the Sales Act. *Id.,* 233 Pa.Super. at 346, 336 A.2d at 358 citing *York Heating and Ventilating Company v. Flannery,* 87 Pa.Super. 19, 23–24 (1926).

Our research reveals that other jurisdictions have addressed this issue. For example, in *Easterly v. Hospital of Texas, Inc.,* 772 S.W.2d 211 (Tex.App.—Dallas 1989), a patient brought an action against a hospital, seeking to recover damages which resulted when a catheter, which was part of an epidural kit, broke off and was left in her spine during child delivery. The lower court granted summary judgment in favor of the defendant hospital. In affirming, our southern sister appellate court noted that:

> As a general proposition, hospitals are providers of services, not merchants selling goods. Absent a specific showing of the sale of a good *not intimately related to the medical service provided,* summary judgment was proper on Easterly' breach of warranty cause of action. *Id.,* at 214. (Emphasis added).

The Texas statute is similar to the Pennsylvania version of the UCC.

And in *Foster v. Memorial Hospital Association of Charleston,* 159 W.Va. 147, 219 S.E.2d 916, 921 (1975), another sister

court stated that the transfer of dangerous or experimental drugs is technically a sale but not the type where there is the passing of title from seller to the buyer for a price, therefore, the law of warranties does not apply.

While these cases are not binding authority on this court, we find their reasoning to be more persuasive than the jurisdictions that permit a more expansive interpretation of the UCC.[7] The essence of a hospital stay is the furnishing of the hospital's healing services. The services rendered necessarily require certain goods or products (among them, frequently, medication), and these goods are usually incidental to the primary purpose of the hospital's function, which is to heal.

In the present case, appellant was admitted to the hospital complaining of pain, and it was determined that she had a ruptured ovarian cyst. In the course of her treatment there, she was given Keflex to fight infection from her ailment. This was directly related to the reason for her stay in the hospital and an intimate part of her medical care. The hospital was not acting as a "merchant", and this was not a "transaction in goods" governed by the Sales Article of the UCC. Therefore, there exists no cause of action upon which the appellants could recover. *Compare M. Leff Radio Parts, Inc. v. Mattel, Inc.,* 706 F.Supp. 387 (W.D.Pa.1988). (To recover for breach of implied warranty of merchantability, plaintiff must show both that the seller was a "merchant" and that the goods were not "merchantable at time of sale").

7. An agreement between a hospital and patient for the performance of a ventral hernia repair operation was a transaction involving "both a service transaction and a transaction in goods" thereby giving rise to an implied warranty of fitness for a particular purpose under the UCC. *M.C. Skelton v. Druid City Hospital Board,* 459 So.2d 818 (Ala.1984); the breach of implied warranty theory does apply to a service organization who maintained staff of physicians and whose primary purpose included birth control advice and dispensing of pills even if no sale is involved. *Berry v. G.D. Searle and Co.,* 56 Ill.2d 548, 309 N.E.2d 550 (1974); while it is likely that the state Supreme Court will in the future hold that the dispensing of drugs by a hospital carries with it the usual implied warrants of quality and merchantability, it is unlikely that the same Supreme Court will hold that a hospital in all cases warrants against the negligence of its employees. *Mauran v. Mary Fletcher Hospital,* 318 F.Supp. 297 (1970) (D.Vermont).

As there is no possibility of recovery under this theory, the lower court was correct in denying appellants' petition to amend the complaint. This claim therefore fails.

Orders affirmed.

DEL SOLE, J., files a concurring statement.

DEL SOLE, Judge, concurring.

I join the Majority in all areas and write only to state that rejection of the breach of warranty claim is consistent with this court's treatment of similar 402A claims. *Podrat v. Codman–Shurtleff, Inc.*, 384 Pa.Super. 404, 558 A.2d 895 (1989).