## Monticello Insurance Co. v. Spinning Wheels Inc.

C.P. of Allegheny County, no. AR95-2054.

*Nicholas D. Krawec,* for plaintiff.
*John W. Zotter,* for defendant Spinning Wheels Inc.
*Robert B. Smith,* for additional defendants Insurance Innovators Inc., George W. Payne and George W. Payne & Co. Inc.

WETTICK, *J.,* July 23, 1996—Monticello Insurance Company brought this lawsuit to recover premiums allegedly due under a general liability insurance policy which it issued to Spinning Wheels Inc. (a roller rink). The subject of this opinion and order of court is a motion of Spinning Wheels seeking leave of court to file an amended counterclaim and to transfer the case to the general docket.[1]

The general liability insurance policy calculates the amount of the premium on Spinning Wheels' actual revenues from its roller rink business. Monticello Insurance Company's amended complaint alleges that

---

1. Spinning Wheels' proposed counterclaim is attached to its motion. Monticello Insurance's claim is within the arbitration limits of this court. The proposed counterclaim seeks damages which exceed these limits.

Spinning Wheels owes an additional premium in the amount of $17,093.75. Spinning Wheels' answer, new matter, and counterclaim avers that the premium which it already paid is based on an accurate audit of its books and that Monticello Insurance's claim for an additional premium is based on income categories that are not part of the receipts on which the insurance premium is based.

In its proposed counterclaim, Spinning Wheels contends that Monticello Insurance has acted in bad faith by bringing this lawsuit because Monticello Insurance knows that Spinning Wheels does not owe the money which it seeks. In this proposed counterclaim, Spinning Wheels seeks attorney's fees and costs incurred in defending this action and punitive damages in excess of $25,000. This proposed counterclaim is an action under 42 Pa.C.S. §8371 which reads as follows:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

Monticello Insurance contends that I should not permit the amendment because section 8371 applies only to lawsuits brought by insureds who have sustained losses because an insurance company has dealt in bad faith with an insurance benefit claim. Spinning Wheels, on the other hand, contends that section 8371 reaches

any intentional or grossly negligent misconduct on the part of an insurance company.[2]

Each party claims that the clear language of section 8371 supports its position. Spinning Wheels relies on the language which permits a court to provide relief in "an action arising under an insurance policy." Monticello Insurance, on the other hand, relies on the remedy provisions which refer to awarding interest "on the amount of the claim from the date the claim was made *by the insured.*" (emphasis added)

Historically, Pennsylvania courts have imposed implied contractual duties of good faith and due care on the part of an insurer in handling claims of and against the insured. See *e.g., Gray v. Nationwide Mutual Insurance Co.,* 422 Pa. 500, 508, 223 A.2d 8, 11 (1966) ("We believe that this recent case law, employing contractual terms for the obligation of the insurer to represent in good faith the rights of the insured, indicates that a breach of such an obligation constitutes a breach of the insurance contract for which an action in assumpsit will lie."); *Gedeon v. State Farm Mutual Automobile Insurance Co.,* 410 Pa. 55, 59, 188 A.2d 320, 321-22 (1963); *Diamon v. Penn Mutual Fire Insurance Co.,* 247 Pa. Super. 534, 550-52, 372 A.2d 1218, 1226-27 (1977) ("When an insured has contracted for protection against a specified loss, he is entitled to expect that a claim made under the policy will not be rejected except for good cause. . . . The duty of good faith and due care in investigating the insured's claim thus implied in the contract is an express condition of the contract."). (footnotes omitted)

---

2. A court should deny a motion to amend if the proposed amendment does not contain factual allegations that set forth a valid cause of action. *Stephenson v. Greenberg,* 421 Pa. Super. 1, 617 A.2d 364 (1992).

While the Pennsylvania Supreme Court refused to recognize a cause of action in tort for an insurance company's breach of the implied covenant to act in good faith and with due care in handling the claims of or against an insured (*D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981)), many other jurisdictions adopted the position of the California Supreme Court in *Gruenberg v. Aetna Insurance Co.,* 510 P.2d 1032 (Cal. 1973). There, the court held that when an insurer "fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." *Id.* at 1037. (emphasis in original) See also, *Egan v. Mutual of Omaha Insurance Co.,* 598 P.2d 452 (Cal. 1979) and cases cited therein.

The tort of bad faith grew out of the recognition that an insurance contract is not an ordinary agreement and the principles of contract law are inadequate to protect the insured from the wrongful denial of insurance claims, or the failure of an insurance company to provide other benefits conferred by the policy, such as the defense of third party lawsuits under a liability insurance policy. In an effort to deter bad faith handling of claims, jurisdictions have relied on tort law to impose a duty on insurance companies to deal fairly and in good faith with policyholders in handling the claims of and against an insured. This judicially created tort is limited to the same instances in which the Pennsylvania case law has imposed implied contractual duties of good faith and fair dealing.

Section 8371 provides relief only if the court "finds that the insurer has acted in bad faith toward the in-

sured." The controlling issue in this case is whether an insurance company has "acted in bad faith toward the insured" within the meaning of section 8371 whenever it has acted in a wilful or grossly careless manner or whether it has "acted in bad faith toward the insured" only in those instances in which it has breached the duty of good faith that is implied in the contract.[3]

In enacting 42 Pa.C.S. §8371, it appears that the legislature's intention was to create a cause of action for the tort of bad faith; the enumerated remedies in this section, all of which may be awarded by a court, are interest on the amount of the claim, punitive damages, and costs and attorney's fees against the insurer. Thus, an insured may bring a claim that the insurer has acted in bad faith toward the insured only in situations in which there has been a breach of the implied obligation of good faith imposed through the case law.

The case law construing section 8371 holds that the term "bad faith" as utilized in section 8371 has acquired a particular meaning in the insurance context. *Terletsky v. Prudential Property and Casualty Insurance Company*, 437 Pa. Super. 108,124, 649 A.2d 680, 688 (1994); *Polselli v. Nationwide Mutual Fire Insurance Co.,* 23 F.2d 747, 751 (3d Cir. 1994); *Coyne v. Allstate Insurance Co.,* 771 F. Supp. 673 (E.D. Pa. 1991). I am not aware of any case law which has included within the meaning of "bad faith" in the insurance context an insurance company's meritless claim for premium payments. Instead, the case law is limited to an insurance company's

---

3. An allegation that a party to a contract has failed to act in good faith does not state a cause of action except in those limited situations in which the duty of good faith has been specifically imposed. See *Creeger Brick and Building Supply Inc. v. Mid-State Bank and Trust Company,* 385 Pa. Super. 30, 36-37, 560 A.2d 151, 153-54 (1989).

breach of the duties of good faith and fair dealing imposed on an insurance company in handling claims of and against the insured.

A lawsuit arising out of a premium dispute is a generic creditor/debtor claim. There is no apparent reason to give an insured a different status from that given to any other defendant who is defending a claim that money is due under a contract. It is significant that section 8371 is a one-way street; it is limited to the insurer acting in bad faith toward the insured. If premium disputes were encompassed within section 8371, there would be no apparent justification for allowing punitive damages and counsel fees where the insurance company acts in bad faith but not where the insured does so.[4] The legislature would not have enacted legislation that provides relief for actions taken in bad faith only to one party to the contract that would extend beyond the situation in which the law has imposed a duty of good faith only on the other party to the contract.

In summary, since I find that section 8371's reference to an insurer having "acted in bad faith toward the insured" is limited to the breach of the duty of good faith that is implied in the insurance contract, the institution of a lawsuit arising out of a premium dispute does not constitute an insurer's acting "in bad faith toward the insured" within the meaning of section 8371.

## ORDER

On July 23, 1996, it is hereby ordered that defendant's motion for leave to file amended pleading and transfer case to general docket is denied.

---

4. This case does not involve any threats to terminate insurance coverage based on nonpayment of the amount of the premium that Monticello Insurance claims to be due.