**Jennifer EASTERLY, et vir, Dan Easterly, Appellants,**

v.

**HSP OF TEXAS, INC., d/b/a HCA Medical Center of Plano, f/k/a Plano General Hospital, Appellee.**

**No. 05–88–00889–CV.**

Court of Appeals of Texas, Dallas.

May 8, 1989.

Timothy M. Fults, Dallas, for appellants.

Sheree Lynn McCall, Michelle D. Chadwick, Strasburger & Price, Dallas, for appellee.

Before ENOCH, C.J., and WHITHAM and BURNETT, JJ.

ENOCH, Chief Justice.

Jennifer Easterly and her husband, Dan Easterly, sued Medical Center of Plano (MCP) for the sale of a defective product. The trial court granted summary judgment in favor of MCP. In one point of error the Easterlys contend that the trial court erred in granting summary judgment because genuine issues of fact exist. We disagree and, affirm the trial court's judgment.

## FACTS

Jennifer Easterly was admitted to the hospital to deliver a child. Once active labor began, Easterly received epidural anesthesia to facilitate the childbirth. The "epidural kit," a sealed package containing an epidural needle and catheter, was provided by MCP.

Epidural anesthesia is administered by inserting a needle into the spinal column, and then pushing the catheter through the needle. The needle is then removed, leaving the catheter in place to enable the anesthesia to flow throughout the delivery.

During administration of this procedure to Jennifer Easterly, while the needle was still in the spinal column, the catheter broke and was left in Easterly's spine. Another epidural kit was utilized and delivery proceeded; however, subsequent surgery was necessary to remove the broken catheter.

The Easterlys sued MCP alleging three causes of action: (1) strict liability; (2) breach of warranty; and (3) deceptive trade practices. The trial judge granted summary judgment for MCP, and the Easterlys now appeal.

## SUMMARY JUDGMENT

### A. Strict Liability

In order to be held strictly liable as a supplier, the Restatement (Second) of the Law of Torts states that:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

RESTATEMENT (SECOND) OF TORTS § 401A (1965).

■ As a general proposition, a hospital cannot be held strictly liable for defective services as opposed to defective products. *Nevauex v. Park Place Hosp., Inc.,* 656 S.W.2d 923, 925 (Tex.App.—Beaumont 1983, writ ref'd n.r.e.). *See, e.g., Langford v. Kraft,* 551 S.W.2d 392, 396 (Tex.Civ.App.—Beaumont 1977), *aff'd,* 565 S.W.2d 223 (Tex.1978). *See generally* Sales, *Strict Tort Liability,* 11 Hous.L.Rev. 1043, 1066 (1974). Strict liability, however, has been applied to hospitals where the court found that the hospital introduced into the stream of commerce a defective product unrelated to the essential professional relationship. *Thomas v. St. Joseph Hosp.,* 618 S.W.2d 791, 796–97 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Therefore, we must ascertain whether the epidural kit was intimately and inseparably connected to the professional service of providing Jennifer Easterly with anesthesia during the delivery of her child.

■ For strict liability to apply, the product must be released in some manner to the consuming public. *American Cyanamid Co. v. Frankson,* 732 S.W.2d 648 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). An epidural kit is not an ordinary good offered to the general public in regular commercial transactions. *See Barbee v. Rogers,* 425 S.W.2d 342, *passim* (Tex.1968); *Vergott v. Deseret Pharmaceuticals Co.,* 463 F.2d 12, 16–17 (5th Cir.1972). The hospital is not in the business of selling epidural kits separate from the medical relationship between doctor and patient involving the furnishing of medical services.

■ The "sale" of the epidural kit was integrally related to the medical procedure—the kit was not a separate good sold in a commercial transaction. *See Shivers v. Good Shepherd Hosp. Inc.,* 427 S.W.2d 104, *passim* (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.) (hospital not strictly liable because it was not a manufacturer or distributor of alleged defective drug); *Ethicon, Inc. v. Parten,* 520 S.W.2d 527, 533 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ) (hospital not strictly liable for a needle which broke off in patient's vaginal cuff). In other words, the epidural kit was so intimately connected to the service provided as to lose its separate character as a good. *Thomas v. St. Joseph Hospital,* 618 S.W.2d at 791, cited by the Easterlys, is distinguishable because, in that case, the patient could have provided his own pajamas; in this case, Jennifer Easterly could not have provided her own epidural kit nor her own anesthesia. Accordingly, summary judgment was proper on the Easterly's strict liability cause of action.

### B. Breach of Warranty

■ Easterly also alleged breach of warranty against MCP. In order for the breach of warranty to apply, there must be a sale of goods by a merchant who deals in

goods of the kind. Goods means all things (including specially manufactured goods) which are moveable at the time of identification under the contract for sale. This does not include money which is used for the purchase price. TEX.BUS. & COM. CODE ANN. §§ 2.105, 2.314 (Vernon 1968).

We recognize that *Providence Hospital v. Truly*, 611 S.W.2d 127, 130 (Tex.Civ.App. —Waco 1980, writ dism'd w.o.j.) holds that a hospital can be held liable for breach of warranty. Specifically, that court held that Texas Business and Commerce Code (UCC) sections 2.315 and 2.316 impose an implied warranty of fitness of goods sold for a particular purpose, unless the warranty is "excluded or modified under the next section," pertaining to the furnishing of human blood, blood plasma, or other human tissue or organs from a blood bank or reservoir of such other tissues or organs.

■ Despite the holding in *Providence*, Texas follows the majority rule that the essence of the hospital stay is the furnishing of the institution's healing services. These services necessarily require certain goods or products, and these goods are usually incidental to the primary purpose of the hospital's function which is to heal. *Potts v. W.Q. Richards Memorial Hosp.*, 558 S.W.2d 939, 946 (Tex.Civ.App.—Amarillo 1977, no writ); *Goelz v. Wadley Research Inst. & Blood Bank*, 350 S.W.2d 573, 577 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.). *See Perlmutter v. Beth David Hosp.*, 308 N.Y. 100, 123 N.E.2d 792, 793–94 (1954). *See* Annotation, *Liability For Injury or Death from Blood Transfusion*. 45 A.L.R.3d 1364, 1383–85 (1972). In *Nevauex*, the court held that the hospital was not a merchant under the UCC, even though it gave radiation treatments using cobalt. Since the hospital was not a merchant, it could not be liable for a breach of implied warranty. *Nevauex*, 656 S.W.2d at 926. Nothing in the record supports the argument that MCP was a merchant as defined in the Texas Business and Commerce Code. TEX.BUS. & COM.CODE ANN. § 2.104 (Vernon 1965).

We agree that the fundamental purpose of hospitals is to heal. As a general proposition, hospitals are providers of services, not merchants selling goods. Absent a specific showing of the sale of a good not intimately related to the medical service provided, summary judgment was proper on the Easterly's breach of warranty cause of action.

## C. Deceptive Trade Practices

■ Easterly's last theory of liability is based on MCP's breach of warranty, unconscionable conduct and misrepresentation under the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA). TEX.BUS. & COM.CODE ANN. §§ 17.41–17.63 (Vernon 1987).

The DTPA does not create warranties nor does it define "warranty." *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex.1984). Therefore, the warranty must be established independently of the DPTA. Implied warranties are found under the Texas Business and Commerce Code sections 2.314 and 2.315 when there is a sale of goods. As noted, when a transaction involves the sale of both goods and services, the question becomes what was the dominant nature of the transaction— the sale of a product or the sale of service? *Quinn v. Memorial Medical Center*, 764 S.W.2d 915, 918 (Tex.App.—Corpus Christi 1989, n.w.h.); *see Freeman v. Shannon Constr. Inc.*, 560 S.W.2d 732, 738 (Tex.Civ. App.—Amarillo 1977, writ ref'd n.r.e.). We have held that the primary relationship between MCP and Jennifer Easterly involved the rendition and procurement of services: the delivery of her child. Because their relationship fundamentally involved services, no implied warranties exist. Therefore, the DTPA does not apply. *But see Ablerman, The Business of Medicine–Health Care Providers, Physicians, and the Deceptive Trade Practices Act*, 26 Hous.L. Rev. 109, 133 (1989).

In conjunction with this position, article 4590i, section 12.01(a) of the Medical Liability and Insurance Act provides that:

Notwithstanding any other law no provisions of Sections 17.41–17.63, Business and Commerce Code, shall apply to physicians or health care providers as defined

in Section 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider. TEX.REV.CIV.STAT.ANN. art. 4590i § 12.01(a) (Vernon Supp.1989). Although this cause of action is not submitted as one of negligence, it does depend on an alleged duty imposed by operation of law. As we have discussed, Texas law indicates that this duty is imposed only when there is a sale of goods.[1] The record demonstrates no sale of goods occurred. Summary judgment was proper on the Easterly's deceptive trade practice cause of action.

Accordingly, we AFFIRM the trial court's judgment.

---

**1.** *Texas State Optical v. Barbee,* 417 S.W.2d 750 (Tex.Civ.App.—Beaumont 1967); *Dorney v. Harris,* 482 F.Supp. 323, 325 (D.Colo.1980) (Those who provide medical care provide services. Ordinarily, they cannot be held liable for breach of implied warranties.); *Belle Bonfils Memorial Blood Bank v. Hansen,* 195 Colo. 529, 579 P.2d 1158, 1160 (1978). We compare this with *Birch-*

*field v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 368 (Tex.1987) (Texas Supreme Court states that the enactment of section 12.01(a) of the Texas Revised Civil Statutes, article 4590i (Vernon Supp.1989) in 1977 did not preclude DTPA actions since the incidents occurred years before the enactment.