******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DEBRA NORMANDY ET AL. *v.* AMERICAN MEDICAL SYSTEMS, INC., ET AL.
## (SC 20500)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

The plaintiffs, D and M, sought to recover damages from the defendant B
Co. for its alleged negligence, recklessness, and civil conspiracy, and
for its alleged violations of the Connecticut Unfair Trade Practices Act
(CUTPA) (§ 42-110a et seq.) and the Connecticut Product Liability Act
(§ 52-572m et seq.), in connection with a surgical procedure performed
at B Co.'s hospital. Specifically, in 2009, D's obstetrician and gynecologist
implanted a mesh sling manufactured by the defendant A Co. in D's body
for the purpose of treating her stress urinary incontinence. Although
D's obstetrician and gynecologist was not an employee of B Co., she
has privileges to practice at B Co.'s hospital, where the procedure
occurred. The sling implanted in D was stocked by B Co.'s hospital at
the request of some of the physicians who have privileges there, and B
Co. paid A Co. $900 for the sling and then billed D's health insurance
carrier $4230 for it. In 2014, D was diagnosed with "mesh exposure"
and had the sling removed. In 2015, the plaintiffs commenced this action
against A Co. and B Co. but subsequently withdrew their claims against
A Co. The plaintiffs alleged, inter alia, that B Co. had engaged in the
business of placing A Co.'s slings into the stream of commerce by
purchasing them from A Co., stocking and marketing them, and selling
them to patients and medical professionals. The trial court granted B
Co.'s motion for summary judgment, concluding that the plaintiffs' prod-
uct liability claim failed because B Co. was not a product seller and
that the plaintiffs' CUTPA and common-law claims were time barred
under the three year statutes (§§ 42-110g (f), 52-577 and 52-584) of
limitations and repose. The trial court also determined that the limitation
and repose periods had not been tolled by either the continuing course
of conduct or the fraudulent concealment doctrine. On the plaintiffs'
appeal, *held*:

1. The trial court correctly concluded that there was no genuine issue of
material fact as to whether B Co. was a product seller of the A Co. sling
for purposes of the plaintiffs' product liability claim and, accordingly,
properly granted B Co.'s motion for summary judgment in connection
with that claim: the jurisdictions that have considered the issue, which
is one of first impression in Connecticut, have predominantly held that
hospitals are providers of a service, namely, medical treatment, and are
immune from strict liability for the harm caused by defective products
used in the medical treatment of patients, and, under the circumstances
of the present case, this court agreed that B Co. was not a "product
seller," as that term is defined in § 52-572m (a), because the essence of
the relationship between D and B Co. was for the furnishing of medical
services rather than the sale of goods; moreover, although B Co.'s hospi-
tal website contained information regarding different surgical proce-
dures for incontinence, the only mention of the A Co. sling appeared
on the website of the medical practice to which D's obstetrician and
gynecologist belonged, there was no evidence that B Co. had any control
over the content of that website, and D admitted to receiving no market-
ing information regarding the A Co. sling from B Co., such that any
mention of the A Co. sling could not be attributed to advertising by B
Co.; furthermore, the facts that B Co. stocked the A Co. sling, billed
D's health insurance carrier for it at a significant upcharge, and may
potentially have profited from the transaction did not, by themselves,
render B Co. a product seller, especially given that services provided
by hospitals are often carried out in emergency situations, which require
that medical supplies be stocked and ready for use; in addition, the
majority of the amount that B Co. had billed D's health insurance carrier
was for recovery and operating room services, further indicating that
the essence of the transaction was for the provision of services.

2. The plaintiffs, who did not dispute that they commenced their action more than five years after D's surgery took place, could not prevail on their claim that the trial court incorrectly determined that the three year statutes of limitations and repose period were not tolled by either the continuing course of conduct or the fraudulent concealment doctrine:

a. The statute of limitations applicable to the plaintiffs' CUTPA claim and statute of limitations and period of repose applicable to the plaintiffs' common-law claims were not tolled by the continuing course of conduct doctrine: the plaintiffs failed to establish a genuine issue of material fact with respect to whether B Co. ever committed an initial wrong by marketing the A Co. sling, which was a necessary factual predicate for their claim that the continuing course of conduct doctrine tolled the statute of limitations applicable to the CUTPA claim, as the only mention of the sling in any marketing material appeared on the website of the practice to which D's obstetrician and gynecologist belonged, over which B Co. had no control, and D admitted that she never received any such marketing information from B Co.; moreover, because it is solely the responsibility of the treating physician to inform a patient of the risks and benefits of a proposed medical procedure, B Co. did not, as the plaintiffs claimed, have an independent or fiduciary duty to inform D of the risks associated with the sling procedure that continued even after the procedure had been completed.

b. The statute of limitations and period of repose applicable to the plaintiffs' common-law claims were not tolled by the fraudulent concealment doctrine; the plaintiffs failed to establish a genuine issue of material fact with respect to whether B Co. intentionally concealed any information regarding the risks of the sling procedure generally or the A Co. sling specifically, as B Co.'s website identified risks associated with that procedure, and the record contained no evidence that any alleged concealment by B Co. was for the specific purpose of delaying the plaintiffs' filing of their complaint.

Argued December 10, 2020—officially released August 9, 2021*

*Procedural History*

Action to recover damages for, inter alia, a violation of the Connecticut Product Liability Act, and for other relief, brought to the Superior Court in the judicial district of Waterbury and transferred to the Complex Litigation Docket, where the plaintiffs withdrew the complaint as to the named defendant; thereafter, the court, *Bellis, J.*, granted the motion for summary judgment filed by the defendant Bristol Hospital, Inc., and rendered judgment thereon, from which the plaintiffs appealed. *Affirmed*.

*Jacqueline E. Fusco*, with whom was *Brenden P. Leydon*, for the appellants (plaintiffs).

*Michael G. Rigg*, for the appellee (defendant Bristol Hospital, Inc.).

*Opinion*

ROBINSON, C. J. The principal issue in this appeal is whether a hospital that purchases, stocks, and supplies a medical device, and then bills a patient for its use during surgery, is a "product seller," as defined by General Statutes § 52-572m (a),[1] for purposes of imposing strict liability under the Connecticut Product Liability Act (product liability act). See General Statutes § 52-572m et seq. The named plaintiff, Debra Normandy,[2] appeals[3] from the trial court's granting of the motion for summary judgment filed by the defendant Bristol Hospital, Inc.,[4] with respect to her complaint alleging injuries arising from the defendant's violations of, inter alia, the product liability act, the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and the common law. On appeal, the plaintiff contends that the trial court incorrectly concluded that (1) the defendant was not a product seller for purposes of imposing strict liability under the product liability act, and (2) her CUTPA and common-law claims were time barred because the statutes of limitations applicable to those claims were not tolled. We conclude that the defendant, as a hospital, is not a product seller for purposes of imposing strict liability pursuant to the product liability act under the circumstances of this case, in which the defendant provided general information regarding various medical procedures on its website and did not significantly participate in placing the medical device at issue into the stream of commerce. We further conclude that the statutes of limitations governing the plaintiff's CUTPA and common-law claims were not tolled. Accordingly, we affirm the judgment of the trial court.

The record, viewed in the light most favorable to the plaintiff, reveals the following facts and procedural history. In 2009, Amy S. Breakstone, an obstetrician and gynecologist who is a member of the CCOG Women's Health Group (practice group), diagnosed the plaintiff with stress urinary incontinence. To treat the plaintiff's condition, Breakstone recommended the surgical implantation of the Monarc Subfascial Hammock pelvic mesh sling (Monarc mesh sling), which was manufactured by American Medical Systems, Inc. See footnote 4 of this opinion. On December 2, 2009, Breakstone performed that surgery on the plaintiff at the defendant hospital. Breakstone is not an employee of the defendant, but she has privileges to practice there.

The defendant maintains a website on which it provides information about its affiliated physicians, including Breakstone, as well as various procedures that are available to patients. The practice group of which Breakstone is a member maintains its own webpage that provides information about incontinence therapies, including specific treatment devices. The practice group's webpage provides a hyperlink titled "Monarc,"

which is the brand of pelvic sling implanted in the plaintiff. The Monarc mesh sling implanted in the plaintiff was stocked by the defendant at the request of some its physicians; the defendant paid American Medical Systems, Inc., $900 for the Monarc mesh sling and then billed the plaintiff's health insurance carrier $4230 for it.

Although physicians have utilized pelvic mesh products containing a "monofilament polypropylene mesh," like the Monarc mesh sling, to treat stress incontinence surgically, "there is scientific evidence that suggests that this material is biologically incompatible with human tissue and should not be used in the pelvic region." On January 24, 2014, the plaintiff was diagnosed with a "mesh exposure" that caused her discomfort and ultimately required surgical removal of the Monarc mesh sling.

The plaintiff brought this action on March 9, 2015, via a two count complaint, alleging, inter alia, violations of the product liability act and CUTPA. Subsequently, the plaintiff filed a request for leave to amend the complaint, seeking to add five new counts against the defendant, alleging common-law claims for negligence, breach of express warranty, breach of implied warranty, recklessness, and civil conspiracy in the third through seventh counts, respectively.[5] The defendant objected to the plaintiff's request to amend the complaint and moved for summary judgment, arguing, inter alia, that the defendant is not a product seller under the product liability act and that the plaintiff's CUTPA and common-law claims were time barred.

The trial court granted the plaintiff's request to amend the complaint, treating it as the operative complaint in considering the defendant's motion for summary judgment. In granting the defendant's motion for summary judgment, the trial court concluded that there was no genuine issue of material fact that the defendant was not a product seller as a matter of law, deeming it "clear from the evidence submitted that the essence of the relationship between [the plaintiff] and the defendant . . . was the provision of medical services, by way of surgery to implant the [Monarc mesh sling]." The trial court further concluded that "[t]he defendant did not place the [Monarc mesh sling] into the stream of commerce but, rather, was a user or consumer of [the sling], as it is of all equipment and products used to provide medical services and [to] treat patients." (Footnote omitted.) In so concluding, the court determined that the majority of Connecticut trial courts, sister state courts, and leading treatises agree that hospitals are not product sellers for purposes of strict product liability. The court also granted the defendant's motion for summary judgment as to the remaining CUTPA and common-law claims, concluding that they were time barred. In doing so, the court concluded that neither the continuing course of conduct nor the fraudulent

concealment doctrine tolled the applicable statutes of limitations. Accordingly, the court rendered judgment for the defendant on all counts of the amended complaint. The court denied the plaintiff's subsequent motion for reconsideration. This appeal followed.

On appeal, the plaintiff contends, inter alia, that the trial court incorrectly concluded that (1) the defendant was not a product seller as a matter of law, and (2) the continuing course of conduct and fraudulent concealment doctrines did not toll the applicable statutes of limitations. We address each claim in turn.

Before turning to the plaintiff's specific claims, we note the well settled standard of review governing summary judgment motions. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]he scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Rutter* v. *Janis*, 334 Conn. 722, 729, 224 A.3d 525 (2020).

I

We begin with the plaintiff's claim that the trial court incorrectly concluded that there was no genuine issue of material fact as to whether the defendant is a product seller for purposes of the product liability act. The plaintiff argues that the defendant "was engaged in the business of selling mesh slings and that the primary, if not sole, purpose of its relationship with [the plaintiff] was providing the sling to be implanted by . . . Breakstone." The plaintiff asserts that evidence of the defendant's regularly stocking pelvic mesh products, marketing the Monarc mesh sling on its website, and selling that device at a markup created a genuine issue of material fact as to whether the defendant was engaged in the business of selling the Monarc mesh sling. In response, the defendant argues that the trial court correctly concluded that it is not a product seller under the product liability act because it was "not engaged in the business" of selling the Monarc mesh sling and because the essence of the relationship between the defendant and the plaintiff "was that of medical service provider and patient." We agree with the defendant and conclude that there is no genuine issue of material fact as to whether it was a product seller of the Monarc mesh sling.

In 1965, Connecticut adopted, as a matter of state common law, § 402A of the Restatement (Second) of Torts. *Garthwait* v. *Burgio*, 153 Conn. 284, 289, 216 A.2d 189 (1965); see 2 Restatement (Second), Torts § 402A, p. 347 (1965). "Section 402A recognized an action for strict product liability in tort without the requirement of privity between the seller and the consumer or proof of manufacturer fault." *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, 321 Conn. 172, 184, 136 A.3d 1232 (2016). "In 1979, our legislature adopted our product liability act. . . . That liability act required all common-law theories of product liability to be brought as a statutory cause of action." (Citation omitted.) Id., 187. Thus, "all claims or actions brought for personal injury . . . caused by the . . . marketing . . . of any product" are brought under the product liability act. General Statutes § 52-572m (b). The product liability act defines "product seller" in relevant part as "any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. . . ." General Statutes § 52-572m (a). Plaintiffs "must establish and prove, inter alia, that . . . the defendant was engaged in the business of *selling* the product . . . [and] the defect existed at the time of the *sale* . . . ." (Emphasis in original, internal quotation marks omitted.) *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 403, 528 A.2d 805 (1987). "Once a particular transaction is labeled a 'service,' as opposed to a 'sale' of a 'product,' it is outside the purview of [the] product liability [act]." Id.

Connecticut courts applying the product liability act have considered "a party . . . a product seller [when] a sale of a product is a principal part of the transaction and [when] the essence of the relationship between the buyer and seller is *not* the furnishing of professional skill or services." (Emphasis in original; internal quotation marks omitted.) *Truglio* v. *Hayes Construction Co.*, 66 Conn. App. 681, 685, 785 A.2d 1153 (2001); see *Paul* v. *McPhee Electrical Contractors*, 46 Conn. App. 18, 23, 698 A.2d 354 (1997) (electrician was not product seller because he merely installed light fixture and was not responsible for placing it in stream of commerce). Thus, in determining whether a hospital is a product seller of a surgical device under the product liability act, which is a question of first impression for this court, we must determine whether, under the circumstances of the case, that hospital is engaged in the business of selling a product.

Although "[n]o unifying test has been devised to determine whether strict liability applies in any given [sales service] combination," the reporters' notes to the Restatement (Third) of Torts observe that hospitals provide both services and products. Restatement (Third), Torts, Products Liability § 20, reporters' note

to comment (d), p. 289 (1998).[6] However, "[m]ost jurisdictions hold that hospitals and doctors provide a service—medical treatment—and immunize them from strict liability for harm from defective products used in medical treatment, whether the product is implanted in the patient, loaned to the patient, or merely used as a tool." Id.

A review of sister state decisions demonstrates that hospitals are predominantly held to be service providers rather than product sellers for purposes of strict liability because the essence of the transaction between a hospital and a patient is for medical services rather than the sale of goods.[7] See, e.g., *Hector* v. *Cedars-Sinai Medical Center*, 180 Cal. App. 3d 493, 507–508, 225 Cal. Rptr. 595 (1986) (hospital was not product seller of pacemaker but provider of medical services); *Ayyash* v. *Henry Ford Health Systems*, 210 Mich. App. 142, 144–47, 533 N.W.2d 353 (1995) (hospital provided service for implant procedure and was not product seller), appeal denied, 450 Mich. 992, 549 N.W.2d 561 (1996); *Royer* v. *Catholic Medical Center*, 144 N.H. 330, 335, 741 A.2d 74 (1999) (hospital was not engaged in business of selling prosthetic devices as matter of law); *Johnson* v. *Mountainside Hospital*, 239 N.J. Super. 312, 321, 571 A.2d 318 (App. Div.) (hospital was not strictly liable for defective respirator leased to patient), cert. denied, 122 N.J. 188, 584 A.2d 248 (1990); *Perlmutter* v. *Beth David Hospital*, 308 N.Y. 100, 104, 123 N.E.2d 792 (1954) (it was apparent that essence of relationship between hospital and patient was for services because "the patient bargains for, and the hospital agrees to make available, the human skill and physical material of medical science to the end that the patient's heath be restored"); *Cafazzo* v. *Central Medical Health Services, Inc.*, 542 Pa. 526, 533–34, 668 A.2d 521 (1995) (hospital was not seller of defective prosthetic device that was incidental to provision of services as matter of law); see also *Farrell* v. *Johnson & Johnson*, 335 Conn. 398, 420–21, 238 A.3d 698 (2020) (upholding directed verdict on innocent misrepresentation claim because "[the plaintiff's] purchase of [the pelvic] mesh was *secondary* to the main purpose of the transaction, namely, to seek surgical assistance for her pelvic organ prolapse" (emphasis added)); *Zbras* v. *St. Vincent's Medical Center*, 91 Conn. App. 289, 294, 880 A.2d 999 (upholding grant of summary judgment because hospital was not product seller of device implanted during surgery when essence of transaction was for services, not goods), cert. denied, 276 Conn. 910, 886 A.2d 424 (2005).

We find particularly illustrative a decision of the Texas Court of Appeals, *Easterly* v. *HSP of Texas, Inc.*, 772 S.W.2d 211, 212–13 (Tex. App. 1989), which concluded that the defendant hospital was not the product seller of an epidural kit. The Texas court considered the distinction between a product seller and service provider and inquired whether "the hospital introduced

into the stream of commerce a defective product unrelated to the essential professional relationship" so as to render the hospital a product seller or, instead, whether the epidural kit "was intimately and inseparably connected to the professional service of providing [the plaintiff] with anesthesia . . . ." Id., 213. The court concluded that the hospital was "not in the business of selling epidural kits separate from the medical relationship between doctor and patient involving the furnishing of medical services." Id. Therefore, the court held that "[t]he 'sale' of the epidural kit was integrally related to the medical procedure—the kit was not a separate good sold in a commercial transaction." Id.

In the present case, the plaintiff claims there is a genuine issue of material fact as to whether the defendant was engaged in the business of selling the Monarc mesh sling.[8] The plaintiff argues that, because the defendant stocked the Monarc mesh sling, advertised it on the hospital website, and billed her insurance for it at a significant upcharge, the essence of the relationship between the defendant and the plaintiff was the sale of the product, rendering the defendant a product seller under the product liability act.[9]

We begin our analysis of the record with the plaintiff's argument that the defendant acted as a product seller when it advertised and marketed medical devices, such as the Monarc mesh sling, on its hospital website and when it advertised Breakstone as an associated physician. This argument is not supported by the record. The defendant's website provides information regarding "different types of surgical procedures for incontinence," as well as information regarding its physicians, including Breakstone. Nowhere on the defendant's website does it describe or mention the Monarc mesh sling. The content on the defendant's website is purely educational or informational in nature, as it describes in general terms the options available to patients to treat incontinence, along with the risks that may accompany such procedures. In fact, the only mention of the Monarc mesh sling on any website in the record is on that of the practice group. There is no evidence that the defendant has any control over the content of the practice group's webpage, meaning that any mention of the Monarc mesh sling can hardly be said to be advertising by the defendant. Indeed, the plaintiff herself testified at her deposition that she did not receive any literature or marketing information regarding the Monarc mesh sling from the defendant.[10] Thus, if the defendant's website constitutes advertising at all, it is advertising the hospital as a service provider.

The plaintiff further argues that there is a genuine issue of material fact as to whether the defendant advertises the Monarc mesh sling because the deposition testimony of Korrine A. Roth, the defendant's Systems Director of Quality Improvement, seemingly contra-

dicted her affidavit, which stated that the defendant "does not market, advertise, or solicit the sale of medical or surgical products." We disagree. Instead, we agree with the defendant that Roth's deposition testimony is wholly consistent with the statement in her affidavit that the defendant advertises its services and not particular products. Roth testified that, "[i]n general, [the defendant's] marketing or advertising [was for] promoting our service for the hospital, promoting our services. . . . So we market and advertise what we do." Roth unambiguously replied in the negative when asked: "And you believe that you don't market or advertise medical or surgical products?"[11]

The plaintiff next argues that the essence of her relationship with the defendant was for the procurement of the Monarc mesh sling because the defendant obtained and stocked the mesh sling, any services provided were dependent on its sale, and the defendant billed the plaintiff at a significant upcharge. We disagree. It is undisputed that the defendant paid $900 for the Monarc mesh sling and subsequently billed the plaintiff's health insurance carrier $4230. The mere fact that the defendant billed for the Monarc mesh sling does not conclusively establish that its sale was the main purpose of the plaintiff's relationship with the defendant. See *In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Products Liability Litigation*, 692 F. Supp. 2d 1012, 1023 (S.D. Ill. 2010) ("the sale of pharmaceuticals is just one aspect of the transaction between patient and pharmacist"), aff'd sub nom. *Walton* v. *Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011); *Brandt* v. *Boston Scientific Corp.*, 204 Ill. 2d 640, 648, 792 N.E.2d 296 (2003) ("it is not reasonable to infer that [the plaintiff] simply went to the hospital, bought the sling, and left"). Furthermore, the fact that the defendant billed the plaintiff far more than it paid for the Monarc mesh sling, and potentially may have profited from providing the product, does not by itself render the defendant a product seller under the product liability act.[12] See *Hector* v. *Cedars-Sinai Medical Center*, supra, 180 Cal. App. 3d 505 ("[t]he 85 percent surcharge in and of itself does not place the hospital in the business of selling pacemakers"). Indeed, given the nature of the services provided by hospitals, often in emergency situations, that a hospital keeps medical supplies on its shelves ready for use does not, without more, render it a product seller.

Finally, we consider other indicia that the essence of the transaction in the present case was for services rather than the sale of a product. First, we observe that the defendant did not bill the plaintiff's health insurance carrier for the cost of the Monarc mesh sling alone. Instead, the defendant billed for the total amount associated with the surgical procedure, including $4230 for the mesh sling and more than $10,000 for various supplies and recovery and operating room services.[13]

Although not dispositive, the fact that the majority of the bill was for services, rather than products, strongly indicates that the essence of the transaction was for the provision of services. See *Brandt* v. *Boston Scientific Corp.*, supra, 204 Ill. 2d 652 (noting that, because "[o]nly a small fraction of the total charge was for the sling," predominant purpose of transaction was for services, not goods). Second, the plaintiff testified at her deposition that the reason she went to the defendant for the surgery, as opposed to another hospital, was because Breakstone, as her physician, scheduled the surgery there.[14]

Because the defendant did not actively advertise the Monarc mesh sling for sale to patients, and because the particular transaction between the plaintiff and the defendant was primarily for services rather than the sale of the medical product, we conclude that the trial court correctly determined that the defendant was not a product seller as a matter of law. Accordingly, the trial court properly granted the defendant's motion for summary judgment on the product liability count.

## II

We turn now to the plaintiff's claim that the trial court incorrectly concluded that the plaintiff's CUTPA and common-law claims were time barred because the statutes of limitations applicable to those claims were not tolled under the doctrines of continuing course of conduct or fraudulent concealment. "[I]n the context of a motion for summary judgment based on a statute of limitations special defense, a defendant typically meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the plaintiff asserts that the [limitation] period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, 312 Conn. 286, 310, 94 A.3d 553 (2014).

It is undisputed that, because the plaintiff's surgery took place on December 1, 2009, and she did not commence this action until February 19, 2015, her claims are time barred by the applicable statutes of limitations and repose period in the absence of tolling.[15] The burden, therefore, shifts to the plaintiff to establish that there is a genuine issue of material fact as to whether the statutes of limitations and repose period were tolled under either the continuing course of conduct or fraudulent concealment doctrine. See id.

## A

The plaintiff first argues that the statute of limitations for the CUTPA claim and statute of limitations and

repose period for the common-law claims are subject to tolling under the continuing course of conduct doctrine because "the defendant continued to market and promote mesh slings" after the plaintiff's surgery, while concealing the risk of sling implant procedures until at least 2016.[16] The plaintiff further argues that the continuing course of conduct doctrine tolls the statute of limitations and repose period applicable to her common-law claims because the defendant owed her a continuing duty to inform her of the risks associated with a mesh sling implant procedure, even after the procedure was completed, as well as a fiduciary duty to do so. In response, the defendant argues that the trial court correctly concluded that the statute of limitations for the CUTPA claim and statute of limitations and period of repose for the common-law claims were not tolled. The defendant asserts that the plaintiff failed to present evidence that the defendant advertised or marketed the Monarc mesh sling that was implanted in the plaintiff. The defendant also argues that hospitals do not have a general or fiduciary duty to inform a patient of the risks associated with surgical procedures. We agree with the defendant and conclude that, under the circumstances of this case, the statute of limitations for the CUTPA claim and statute of limitations and period of repose for the common-law claims were not tolled by the continuing course of conduct doctrine.

On a motion for summary judgment, when deciding whether a statute of limitations or repose is tolled by the continuing of conduct doctrine, the court "must determine whether there is a genuine issue of material fact with respect to whether the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." (Internal quotation marks omitted.) *Martinelli* v. *Fusi*, 290 Conn. 347, 357, 963 A.2d 640 (2009).

Having reviewed the record, we conclude that the plaintiff has failed to establish a genuine issue of material fact with respect to whether the defendant ever advertised the Monarc mesh sling on its hospital website. Although the *practice group's* website provided a single mention and hyperlink to the Monarc mesh sling, the plaintiff has not demonstrated that the defendant had any control over the contents of that webpage.[17] Moreover, even if we were to assume that the generic mentions of mesh slings on the defendant's website constituted advertising, the record clearly indicates that the plaintiff herself never saw or received any such marketing by the defendant. See footnote 10 of this opinion. Because there is no evidence that the defendant committed the initial wrong of marketing the product in a way *that contributed to the plaintiff's injury*, the continuing course of conduct doctrine does not toll the statute of limitations applicable to the plaintiff's CUTPA claim.[18] See, e.g., *Soto* v. *Bushmaster Firearms*

*International, LLC*, 331 Conn. 53, 94, 202 A.3d 262 ("standing to bring a CUTPA claim will lie only when the purportedly unfair trade practice is alleged to have directly and proximately caused the plaintiff's injuries"), cert. denied sub nom. *Remington Arms Co., LLC* v. *Soto*,      U.S.     , 140 S. Ct. 513, 205 L. Ed. 2d 317 (2019).

We further conclude that the defendant did not have an independent duty to inform the plaintiff of the risks associated with a mesh sling implant procedure, even after the procedure had been completed, as well as a fiduciary duty. As the defendant argues, a hospital generally does not have an independent responsibility to inform a patient of risks associated with a medical procedure. See *Sherwood* v. *Danbury Hospital*, 278 Conn. 163, 196, 896 A.2d 777 (2006). "[I]t is solely the responsibility of the nonemployee treating physician, and not the duty of the hospital, to inform the patient of the risks and benefits of, and alternatives to, a proposed medical procedure  . . . ." Id., 185–86. Therefore, because the defendant hospital had no independent duty to inform the plaintiff of the risks associated with the mesh sling implant procedure, there is no genuine issue of material fact as to whether the continuing course of conduct doctrine tolls the statute of limitations and period of repose applicable to the plaintiff's common-law claims.

B

Finally, the plaintiff argues that the statute of limitations and period of repose applicable to her common-law claims are tolled under the doctrine of fraudulent concealment, as codified in General Statutes § 52-595.[19] The plaintiff seems to claim that the defendant fraudulently concealed the risks associated with the mesh sling implant procedure because the defendant had actual knowledge of the dangers and intentionally concealed that information from the plaintiff. In response, the defendant argues that it warned of the risks associated with mesh sling implantation surgery on its website and that the plaintiff failed to submit evidence to demonstrate any concealment on the part of the defendant.

"[T]o toll a statute of limitations by way of [the] fraudulent concealment statute [§ 52-595], a plaintiff must present evidence that a defendant: (1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the [plaintiff's] cause of action; (2) intentionally concealed these facts from the [plaintiff]; and (3) concealed the facts for the purpose of obtaining delay on the [plaintiff's] part in filing a complaint on their cause of action." (Internal quotation marks omitted.) *Iacurci* v. *Sax*, 313 Conn. 786, 799–800, 99 A.3d 1145 (2014).

Having reviewed the record, we conclude that the plaintiff has failed to establish a genuine issue of mate-

rial fact with respect to whether the defendant concealed any information regarding the risks of the mesh sling implant procedure generally or the Monarc mesh sling specifically. First, the defendant's website indicates there are risks associated with the procedure, stating: "Postoperative urinary problems, such as voiding problems, urinary tract infections, and urge incontinence may occur. The [United States Food and Drug Administration] has reported complications associated with some synthetic mesh slings." Second, the record contains no direct or circumstantial evidence that any alleged concealment by the defendant was for the specific purpose of delaying the plaintiff's filing of the complaint. We conclude, therefore, that the trial court correctly determined that the plaintiff's claims are time barred, as the statutes of limitations and period of repose were not tolled by the doctrines of fraudulent concealment or continuing course of conduct. Accordingly, the trial court properly granted the defendant's motion for summary judgment with respect to the plaintiff's CUTPA and common-law claims.

The judgment is affirmed.

In this opinion the other justices concurred.

* August 9, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 52-572m (a) provides: " 'Product seller' means any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term 'product seller' also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products."

[2] Mark Normandy, who is Debra Normandy's husband, is also a plaintiff in this action. The sole count of the operative complaint pertaining to Mark Normandy is the product liability count, which alleges that he suffered emotional distress and a loss of consortium, a claim that is derivative of Debra Normandy's statutory claim. For the sake of convenience, all references to the plaintiff in this opinion are to Debra Normandy.

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] We note that the plaintiff's original, two count complaint was against both Bristol Hospital, Inc., and the named defendant, American Medical Systems, Inc. The plaintiff subsequently withdrew her complaint as to the named defendant on July 10, 2015. Accordingly, all references herein to the defendant are to Bristol Hospital, Inc.

[5] The complaint also alleged a loss of consortium claim on behalf of her husband. See footnote 2 of this opinion.

[6] The plaintiff argues that the trial court improperly relied on § 20 of the Restatement (Third) of Torts because the "[a]doption of [the Restatement (Third) of Torts] for product liability claims has been rejected in Connecticut." The plaintiff relies on *Bifolck* v. *Philip Morris, Inc.*, 324 Conn. 402, 408, 152 A.3d 1183 (2016), in which this court declined to adopt the Restatement (Third) or to make any substantive changes to our product liability tests, instead favoring "modest refinements" to the approach under the Restatement (Second). This court, however, has deemed the Restatement (Third) instructive and persuasive in other contexts. See *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 335–36, 107 A.3d 381 (2015) (referencing Restatement (Third) in recognizing range of reasonable foreseeability); *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 624–25, 99 A.3d 1079 (2014) (referring to Restatement (Third) when defining essential elements of product malfunction claim as example of developing theory); see also *Hayes* v. *Caspers, Ltd.*, 90 Conn. App. 781, 792–93, 881 A.2d 428 (trial court's jury instruction on proximate cause "functionally mirror[ed]" test in Restatement (Third), which "provide[d] yet another basis for sustaining

the validity of the court's instructions"), cert. denied, 276 Conn. 915, 888 A.2d 84 (2005). In contrast to *Bifolck*, the issue presented in the present case does not require us to undertake a significant shift from the analysis of the Restatement (Second). Accordingly, we deem the Restatement (Third) instructive.

[7] In a situation that is distinguishable from the present case, we note that hospitals have been deemed product sellers when the product at issue is not "integrally associated with the medical treatment." Restatement (Third), supra, § 20, reporter's note to comment (d), p. 290; see *Johnson* v. *Sears, Roebuck & Co.*, 355 F. Supp. 1065, 1067 (E.D. Wis. 1973) (hospital may be strictly liable for "mechanical and administrative services"); *Thomas* v. *St. Joseph Hospital*, 618 S.W.2d 791, 796–97 (Tex. Civ. App. 1981, writ ref'd n.r.e.) (hospital may be strictly liable for patient's gown that caught on fire).

[8] The plaintiff relies on the observation of the United States District Court for the District of Connecticut that there is no "broad categorical rule" that hospitals cannot be product sellers of medical devices they sell to patients. *Mihok* v. *Medtronic, Inc.*, 119 F. Supp. 3d 22, 37 (D. Conn. 2015). The defendant, however, does not argue that hospitals can *never* be product sellers under the product liability act. It simply argues that, *on the facts of this case*, it is not a product seller because of its relationship with the plaintiff and the nature of the transaction centering on surgical services rather than the sale of the product itself.

[9] The plaintiff also argues that the trial court improperly failed to find that "a fiduciary duty existed such that the defendant was required to inform the plaintiff of the dangers of the [Monarc] mesh sling about which it had actual knowledge and . . . the opportunity to mitigate." This court, however, has already concluded that the nonemployee treating physician, rather than the hospital, owes a fiduciary duty to a patient to warn them of the risks of a procedure. See *Sherwood* v. *Danbury Hospital*, 278 Conn. 163, 185–86, 196, 896 A.2d 777 (2006). Thus, the defendant did not owe an independent fiduciary duty to the plaintiff to warn her of any risks associated with her surgical procedure.

[10] At her deposition, the plaintiff was asked: "Have you ever seen any advertising from [the defendant]?" The plaintiff replied, "I have." She then responded in the negative when asked whether any of the defendant's advertisements "mention[ed] the sling that [she] had received during [her] surgery . . . ." Finally, she was asked: "Did you ever see any advertisements at all for the sling that you received during your surgery, from anybody?" The plaintiff responded: "Just the brochure that . . . Breakstone had given me. . . . There wasn't much information though. I mean, they were just promoting their product."

[11] The plaintiff also argues that, because the United States Food and Drug Administration (FDA) defines both "device user facility" and "distributor" to include hospitals, the defendant should be considered a product seller in the context of strict product liability. 21 C.F.R. § 803.3 (d) and (e) (2020). The plaintiff fails to provide any authority to support her argument that hospitals are considered "distributors" by the FDA and that such a conclusion would be persuasive in the product liability context. The plain language of the federal regulations includes hospital in the definition of "device user facility." See id., § 803.3 (d). "Distributor" is defined in relevant part as "any person (other than the manufacturer or importer) *who furthers the marketing of a device from the original place of manufacture to the person who makes final delivery or sale to the ultimate user*, but who does not repackage or otherwise change the container, wrapper, or labeling of the device or device package. . . ." (Emphasis added.) Id., § 803.3 (e). Because we conclude that there is no genuine issue of material fact that the defendant did not market the Monarc mesh sling to the plaintiff, the defendant is not a "distributor" under the plain language of the federal regulations.

[12] The defendant points out that the record does not indicate how much ultimately was paid by the plaintiff's health insurance carrier.

[13] The record indicates that the defendant billed $1757.93 for other supplies, such as pharmaceuticals and surgical supplies, $2110 for recovery room services, $5890.50 for operating room services, and $335 for various laboratory testing and treatment. As we noted, there is no evidence in the record of the amount the plaintiff's health insurance carrier actually paid to the defendant. See footnote 12 of this opinion.

[14] When asked at her deposition why she went to "Bristol Hospital on December 1, 2009," the plaintiff stated, "Breakstone scheduled it. . . . The sling surgery."

[15] The plaintiff's various claims are governed by three year statutes of

limitations and a three year period of repose. See General Statutes § 42-110g (f) ("[a]n action under this section may not be brought more than three years after the occurrence of a violation of this chapter"); General Statutes § 52-577 ("[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of"); General Statutes § 52-584 ("[n]o action to recover damages for injury to the person, or to real or personal property . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of").

"As this court previously has observed, [w]hile statutes of limitation[s] are sometimes called statutes of repose, the former bars [a] right of action unless it is filed within a specified period of time after [an] injury occurs, [whereas] statute[s] of repose [terminate] any right of action after a specific time has elapsed, regardless of whether there has as yet been an injury." (Internal quotation marks omitted.) *State* v. *Lombardo Bros. Mason Contractors, Inc.*, 307 Conn. 412, 416 n.2, 54 A.3d 1005 (2012); see also *Baxter* v. *Sturm, Ruger & Co.*, 230 Conn. 335, 341, 644 A.2d 1297 (1994).

[16] We note that the period of repose under General Statues § 52-584 may be tolled by the doctrines of continuing course of conduct and fraudulent concealment. See *Neuhaus* v. *DeCholnoky*, 280 Conn. 190, 201, 905 A.2d 1135 (2006) (continuing course of conduct doctrine may toll period of repose in § 52-584); *Connell* v. *Colwell*, 214 Conn. 242, 246 n.4, 571 A.2d 116 (1990) (fraudulent concealment doctrine may toll period of repose under § 52-584).

[17] The plaintiff relies on *Soto* v. *Bushmaster Firearms International, LLC*, 331 Conn. 53, 94, 202 A.3d 262, cert. denied sub nom. *Remington Arms Co., LLC* v. *Soto*,      U.S.      , 140 S. Ct. 513, 205 L. Ed. 2d 317 (2019), to support her argument that her claim under CUTPA is not time barred. This case is distinguishable from *Soto*, however, because there is no evidence that the defendant itself marketed the Monarc mesh sling.

[18] The parties dispute whether the CUTPA statute of limitations may be tolled by the continuing course of conduct doctrine. The plaintiff argues that the doctrine does apply, citing a decision of the United States Bankruptcy Court for the District of Connecticut. See *In re Kellogg*, 166 B.R. 504, 507 (Bankr. D. Conn. 1994). In response, the defendant cites to our decision in *Flannery* v. *Singer Asset Finance Co., LLC*, supra, 312 Conn. 286, to support its argument that the continuing course of conduct doctrine does not toll the statute of limitations under CUTPA. In *Flannery*, we determined that, "[b]ecause the plaintiff's tolling claim is entirely nonviable, we need not address his second claim regarding the applicability of tolling to save an untimely CUTPA action." Id., 298. Here, we again do not need to reach the issue of whether the CUTPA limitation period may be tolled by the continuing course of conduct doctrine because we conclude that there is no factual predicate for the application of that doctrine.

[19] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."